# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**THOMAS DART, SHERIFF OF COOK COUNTY**

> **Plaintiff,**

> **v.**

**CRAIGSLIST, INC.,**

> **Defendant.**

**Case No.  09 CV 1385**

**Judge Grady**

## SHERIFF THOMAS DART'S RESPONSE TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Respectfully submitted,

Plaintiff, Sheriff Thomas Dart

By:     s/ Daniel F. Gallagher

Daniel F. Gallagher
Paul O'Grady
Christopher P. Keleher
QUERREY & HARROW, LTD.
175 W. Jackson Blvd.
Suite 1600
Chicago, IL 60604
(312) 540-7000

TABLE OF AUTHORITIES ............................................................... ii-v

INTRODUCTION................................................................................. 1

ARGUMENT......................................................................................... 2

I.     The Burden Rests With Craigslist ................................................. 2

II.    Advertising Prostitution Is Not Constitutionally Protected ..................... 3
     A.    Facilitating prostitution is not constitutionally protected............. 3
     B.    Escort services are not constitutionally protected........................... 4

III.   Craigslist's Reliance On The Communications Decencey
     Act Is Misplaced And The Case Should Not Be Dismissed
     On That Basis ........................................................................ 5
     A.    The Communications Decency Act was not intended to Foster
         Crime .......................................................................... 5
     B.    The facts of this case remove it from the purview of § 230............ 7
     C.    Craigslist's case law does not support its § 230 argument.............. 8
         1.    This case does not involve defamation................................. 8
         2.    Non-defamation cases demonstrate § 230 is inapplicable... 9
             a.    *Doe v. GTE*, 347 F.3d 655 (7th Cir. 2003)...................... 9
             b.    *Chicago Lawyers' Committee v. Craigslist, Inc.*
                *519 F.3d 666 (7th Cir. 2008)* ......................................... 10
             c.    *Fair Housing Council of San Fernando Valley*
                *v. Roommates.com*, 521 F.3d 1157 (9th Cir. 2008)
                (en banc) ................................................................. 11
             d.    The Eleventh Circuit limits § 230 immunity ........... 12
             e.    Trial court case law further demonstrates
                Craigslist's liability..................................................... 13
     D.    Craigslist's broad immunity argument is not supported by
         the text or history of 47 U.S.C. § 230.................................. 14

IV.   Even if Craigslist is not an Information Content Provider, It
     Knowingly Provides for Illegal Conduct .................................... 15
     A.    Websites are responsible for unlawful content ............................ 16
     B.    Craigslist knows adult services is used for sex-
         related services ........................................................... 16

V.    The Relief Sought Does Not Implicate Prior Restraint Concerns........... 17

CONCLUSION.................................................................................. 19

i

## TABLE OF AUTHORITIES

*A&M Records, Inc. v. Napster, Inc.,*
239 F.3d 1004 (9th Cir. 2001) ............................................................................ 16

*Alexander v. United States,*
509 U.S. 544 (1993) ............................................................................................ 18

*Almeida v. Amazon.com,*
456 F.3d 1316 (11th Cir. 2008) .......................................................................... 12

*Anthony v. Yahoo,*
421 F. Supp. 2d 1257 (N.D. Cal. 2006) ............................................................. 14

*Batzel v. Smith,*
351 F.3d 904 (9th Cir. 2003) ................................................................................ 6

*Ben Ezra v. America Online,*
206 F.3d 980 (10th Cir. 2000) .............................................................................. 8

*Blumenthal v. Drudge,*
992 F. Supp. 44 (D.D.C. 1998) ............................................................................. 6

*Braun v. Soldier of Fortune Magazine,*
968 F.2d 1110 (11th Cir. 1990) ............................................................................. 3

*Cabash, Inc. v. Thone,*
651 F.2d 551 (8th Cir. 1981) ................................................................................. 4

*Carafano v. Metrosplash.com, Inc.,*
207 F. Supp. 2d 1055 (C.D. Cal. 2002) ................................................................ 6

*Carafano v. Metrosplash.com,*
339 F.3d 1119 (9th Cir. 2003) ............................................................................... 6

*Central Hudson Gas & Elec. Corp. v. Public Service Comm'n.,*
447 U.S. 557 (1980) .............................................................................................. 3

*Chicago Lawyers' Committee v. Craigslist, Inc.*
519 F.3d 666 (7th Cir. 2008) ............................................................................... 10

*Collins v. Jordan,*
110 F.3d 1363 (9th Cir. 1996) ............................................................................. 17

*Ctr. for Fair Pub. Policy v. Maricopa County,*
336 F.3d 1153 (9th Cir. 2003) ........................................................ 4

*Doe v. GTE,*
347 F.3d 655 (7th Cir. 2003) ..................................................... 9,14

*Doe v. MySpace,*
582 F.3d 413 (5th Cir. 2008) .........................................................17

*Doe v. SexSearch.com,*
502 F. Supp. 2d 719 (N.D. Ohio 2007) ..................................... 5,9

*Fair Housing Council of San Fernando Valley v. Roommates.com,*
521 F.3d 1157 (9th Cir. 2008) (en banc) ................................ 5, 11

*First Global Comm., Inc. v. Bond,*
413 F. Supp. 2d 1150 (W.D. Wash. 2006) .................................... 5

*FW/PBS, Inc. v. Dallas,*
493 U.S. 215 (1990) ....................................................................... 4

*Giboney v. Empire Storage & Ice Co.,*
336 U. S. 490 (1949) ...................................................................... 3

*Gillman v. Burlington Northern,*
878 F.2d 1020 (7th Cir. 1989) ........................................................ 3

*Green v. America Online,*
318 F.3d 465 (3d Cir. 2003) ........................................................... 8

*Hy Cite Corp. v. Badbusinessbureau.com,*
418 F. Supp. 2d 1142 (D. Ariz. 2005) ........................................ 13

*IDK, Inc. v. County of Clark,*
836 F.2d 1185 (9th Cir. 1988) ........................................................ 4

*MCW, Inc. v. Badbusinessbureau.com,*
2004 U.S. Dist. Lexis 6678 (N.D. Tex. 2004) ............................ 13

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,*
545 U.S. 913 (2005) ..................................................................... 15

*Moss v. Martin,*
473 F.3d 694 (7th Cir. 2007) .......................................................... 2

*New York Times Co. v. United States,*
403 U.S. 713, 714 (1971) ............................................................................. 18

*NPS, LLC v. StubHub, Inc.,*
2009 Mass. Super. LEXIS 97 (Mass. Supp. 2009)...................................... 13

*Pittsburgh Press Co. v. Pittsburgh Comm. on Human Relations,*
413 U.S. 376 (1970).......................................................................................... 3

*Southeastern Promotions, Ltd. v. Conrad,*
420 U.S. 546 (1975).......................................................................................... 18

*Stratton Oakmont v. Prodigy,*
1995 N.Y. Misc. LEXIS 712 (N.Y. Sup. Ct. 1995) ........................................ 6

*United States v. Montague,*
29 F.3d 317, 321 (7th Cir. 1994) ..................................................................... 4

*United States v. Schiff,*
379 F.3d 621 (9th Cir. 2004)............................................................................. 4

*United States v. Stern,*
585 F.2d 1241, 1248 (7th Cir. 1988) .......................................................... 4,5

*Weinberg v. City of Chi.,*
310 F.3d 1029 (7th Cir. 2003)........................................................................ 18

*Whitney v. Xcentric,*
199 Fed. Appx. 738 (11th Cir. 2006) ........................................................... 12

Whitney Info. Network, Inc. v. Xcentric Ventures, LLC,
2008 U.S. Dist. LEXIS 11632 (M.D. Fla. 2008) ...........................................12

*Zeran v. America Online,*
129 F.3d 327 (4th Cir. 1997).......................................................8,9,10, 14

## Statutes, Rules and Constitutional Provisions

31 U.S.C. § 5361 ............................................................................... 16

47 U.S.C. § 230(c)(1) ................................................................. 6,9,10

47 U.S.C. § 230(c)(2) ........................................................................ 9

47 U.S.C. § 230(e) ............................................................................ 6

47 U.S.C. § 230(f)(3) ........................................................................ 6

141 Cong. Rec. H8469-H8470 ......................................................... 7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS DART, SHERIFF OF COOK COUNTY | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| CRAIGSLIST, INC., | ) ) ) |
| Defendant. | ) ) ) |

Case No.  09 CV 1385

Judge John F. Grady

## RESPONSE TO CRAIGSLIST'S MOTION FOR JUDGMENT ON THE PLEADINGS

NOW COMES THOMAS DART, as Sheriff of Cook County, Illinois ("the Sheriff"), by and through his attorneys, QUERREY & HARROW, LTD., and for his Response to Craigslist's Motion for Judgment on the Pleadings, states as follows:

In the face of nationwide pressure, Craigslist closed its erotic services section on May 20, 2009. This development would have signaled the end of this lawsuit had Craigslist not simultaneously reopened erotic services under a new name, "adult services." Because Craigslist's alterations do not redress the allegations prompting this suit, the Sheriff must continue this action.[1]

## INTRODUCTION

This case is not about abuse of a website by third party users. This case is about a business that created an online forum for illegal conduct. It is about a business that facilitates prostitution. It is about a business on the Internet acting in a way that no brick and mortar establishment ever could.

---

[1] Craigslist also trimmed its 21 subcategories to 5, and in conjunction with purportedly closer scrutiny of adult services posts, will now charge $10 per adult services post. Unlike the prior arrangement, the money will not be given to charity.

Craigslist is the largest source of prostitution in the country. Its role in this ignominious feat is clear. Third party users did not create an adult services category on its website; Craigslist did. Third party users did not create multiple subcategories within adult services; Craigslist did. Third party users did not create the forum's word search function; Craigslist did. A business cannot ignore the havoc it wreaks. While Craigslist makes an estimated $2,000,000 a month via the adult services section, law enforcement grapples with human trafficking. While Craigslist earned $80 million in 2008, nonprofit groups struggle to help sex trade victims. Thus, Craigslist privatizes the profits and socializes the costs of prostitution.

Craigslist shuns these uncomfortable truths as its Motion extols the virtues of its site. But online communications are not sacrosanct. The laudable aims of facilitating Internet growth and fostering free speech were not meant to provide cover for criminal conduct. The frailty of Craigslist's position is captured by a single question: How are free speech and Internet growth furthered by a forum used for prostitution? Craigslist can no more evade responsibility for a section entitled "Narcotics for Sale" than it can for "Adult Services." The Court should hold Craigslist liable for its nuisance.

<u>ARGUMENT</u>

Before delving into why Craigslist's Motion fails, an initial point is addressed. A litigant's willingness to embrace its position demonstrates confidence. Thus, Craigslist's unease with the designation "erotic services" speaks volumes. The phrase is a casualty of its own transparency as Craigslist instead uses the neutral, "subcategory," the awkward, "a subcategory of the website, called 'erotic'," and the unwieldy, "one of the subcategories of the 'services' section of the Craigslist website is titled 'erotic.'" (Mot. at 1, 4.) This linguistic legerdemain cannot conceal the designation Craigslist chose: "erotic services." The new name, "adult services," is no less transparent.

I.      **The Burden Rests With Craigslist.**

Judgment on the pleadings is appropriate only when "it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving

2

party demonstrates that there are no material issues of fact to be resolved." *Moss v. Martin,* 473 F.3d 694, 698 (7th Cir. 2007). In deciding such a motion, all of the well-pleaded allegations in the non-moving party's pleadings are taken as true. *Gillman v. Burlington Northern R.R. Co.,* 878 F.2d 1020, 1022 (7th Cir. 1989). The Court also views the facts in the Sheriff's favor. *Id.*

## II.   Advertising Prostitution Is Not Constitutionally Protected.

The linchpin of Craigslist's Motion is that 47 U.S.C. § 230, the immunity provision of the Communications Decency Act, applies. This claim is built on the assumption that the underlying content, advertisements for prostitution and escort services, is constitutionally protected. But Craigslist never explicitly addresses this threshold issue. Before discussing § 230, the following sections establish that providing a forum for prostitution and escort service advertisements is not protected by the Constitution.

### A.   Facilitating prostitution is illegal.

Craigslist's adult services section is a sex advertisement forum rife with prostitution ads. Offers to engage in illegal transactions are excluded from First Amendment protection. *Giboney v. Empire Storage & Ice Co.,* 336 U.S. 490, 498 (1949). Thus, commercial speech related to illegal activity can be prohibited. *Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n.,* 447 U.S. 557, 563-64 (1980). Moreover, there is no constitutional interest in publishing ads soliciting criminal activity. *Braun v. Soldier of Fortune Magazine,* 968 F.2d 1110, 1117 (11th Cir. 1990).

The seminal case is *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations,* 413 U.S. 376 (1970). In *Pittsburgh Press,* the Supreme Court upheld an ordinance forbidding a newspaper from advertising jobs under "male interest" and "female interest," because the ads discriminated on the basis of gender. *Id.* at 389. The Court noted, a newspaper "could be forbidden to publish a want ad proposing a sale of narcotics or soliciting prostitutes. Nor would the result be different if the nature of the transaction were indicated by placement under columns captioned 'Narcotics For Sale'

and 'Prostitutes Wanted.'" *Id*. *Pittsburgh Press* highlights the tenuous nature of Craigslist's position.

Circuit courts have invoked the Supreme Court's instruction on numerous occasions. "Speech that aids or abets criminal activity can be prohibited." *United States v. Schiff*, 379 F.3d 621, 626 (9th Cir. 2004). The Eighth Circuit upheld the restraint of advertising drug paraphernalia in *Cabash, Inc. v. Thone*, 651 F.2d 551 (8th Cir. 1981). It noted that such speech "is analogous to advertisements promoting the sale of narcotics or soliciting prostitution, and may constitutionally be prohibited." *Id*. at 564. Thus, Craigslist can seek no refuge in the Constitution for maintaining prostitution ads.

### B.    Escort services are not constitutionally protected.

That prostitution is euphemistically referred to as "escort services" does not make the act less dehumanizing. Courts have endorsed the notion that calling prostitution something else does not sanitize it, as exemplified by *IDK, Inc. v. County of Clark*, 836 F.2d 1185 (9th Cir. 1988). A regulation prohibiting unlicensed escort services was upheld in *IDK*. Plaintiff, an escort service, could not invoke the First Amendment because "escort services are primarily commercial enterprises, and their activities are not predominately of the type protected by the First Amendment." *Id*. at 1195. The court also rejected plaintiff's Fourteenth Amendment claim, holding that "the relationship between the client and his or her paid companion may well be the antithesis of the highly personal bonds protected by the Fourteenth Amendment." *Id*. at 1193.

The Supreme Court has noted that "some businesses … apparently are not protected by the First Amendment e.g., escort agencies and sexual encounter centers . . . ." *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 224 (1990). *See also Ctr. for Fair Pub. Policy v. Maricopa County*, 336 F.3d 1153, 1165 (9th Cir. 2003) ("businesses that have no such [constitutional] protection-escort agencies."). Cases in the Seventh Circuit also recognize the terms "escort services" and "prostitution" are a distinction without a difference. *United States v. Montague*, 29 F.3d 317, 321 (7th Cir. 1994); *United States v. Stern*, 585 F.2d

1241, 1248 (7th Cir. 1988). Thus, the euphemism "escort service" neither hides reality nor provides constitutional cover.

A case grappling with online prostitution advertisements is *First Global Commc'ns, Inc. v. Bond*, 413 F. Supp. 2d 1150 (W.D. Wash. 2006). Plaintiff registered a trademark for the term "World Sex Guide" and operated a website under that name. Plaintiff alleged that defendants infringed on the mark through a similar website. But plaintiff could not avail itself of injunctive relief because it could not show clean hands. The court's reasoning is noteworthy. "At least some of the materials on Plaintiff's site (e.g., advertisements for 'escort services') appear to constitute commercial speech regarding illegal activities." *Id*. at 1155. The court refused to facilitate "the dissemination of materials that aid individuals in procuring illegal prostitution services." *Id*. at 1156. *First Global* acknowledges the reality which Craigslist will not - advertising escort services can be prohibited.

The First Amendment is not absolute. The inability to yell fire in a crowded theater is well known. Soliciting sex on the street or providing a locale to do so is no more protected. Doing so online changes nothing, for "[t]he Communications Decency Act was not meant to create a lawless no-man's-land on the Internet." *Fair Hous. Council v. Roommates.com*, 521 F.3d 1157, 1164 (9th Cir. 2008) (en banc).

### III.    Craigslist's Reliance On The Communications Decency Act Is Misplaced And The Case Should Not Be Dismissed On That Basis.

The section above disabuses any notion the Constitution protects ads for prostitution or escort services. The following section demonstrates the statutory terrain is equally inhospitable.

#### A.    The Communications Decency Act was not intended to foster crime.

Section 230 of the Communications Decency Act ("CDA") protects providers and users of interactive computer services (which encompasses websites) against liability for third party content. It states, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another

information content provider." 47 U.S.C. § 230(c)(1). An important caveat exists. This law applies only if the provider is not "responsible, in whole or in part, for the creation or development of the offending content." 47 U.S.C. § 230(f)(3). "The ordinary usage of 'development' suggests an addition to or novel presentation of, the information." *Batzel v. Smith*, 351 F.3d 904, 905 (9th Cir. 2003) (dissent from denial of rehearing en banc). In short, the CDA does not protect a website from allegations that it created the tortious or illegal content. *Doe v. SexSearch.com*, 502 F. Supp. 2d 719, 724 (N.D. Ohio 2007).

Numerous limitations to § 230 exist. Federal criminal law, intellectual property law, state law, and the Electronic Communications Privacy Act of 1986 are all cited by the CDA as exceptions to its mandates. 47 U.S.C. § 230(e). For example, the CDA's impact on criminal laws is clear, "[n]othing in this section shall be construed to impair the enforcement of . . . any other Federal criminal statute." *Id.*

A website operator such as Craigslist can be both a service provider and a content provider. The CDA does not immunize a service provider if it also functions as a content provider for the content at issue. *Carafano v. Metrosplash.com*, 339 F.3d 1119, 1125 (9th Cir. 2003). *See also Blumenthal v. Drudge*, 992 F. Supp. 44, 50 (D.D.C. 1998) (liability for service provider possible if it "had any role in creating or developing any of the information"). The CDA requires courts to determine when content created by third parties becomes content developed by a service provider. *Carafano v. Metrosplash.com, Inc.*, 207 F. Supp. 2d 1055, 1067-68 (C.D. Cal. 2002). Thus, a website is a content provider for content it creates itself, or content that it is "responsible, in whole or in part" for creating. 47 U.S.C. § 230(f)(3).

To understand why § 230 does not apply here, an examination of its impetus, *Stratton Oakmont v. Prodigy*, 1995 N.Y. Misc. LEXIS 712 (N.Y. Sup. Ct. 1995), is necessary. *Stratton* involved a third party's defamatory comments about the plaintiff. The remarks were made on defendant's electronic bulletin board. The court found defendant liable as a publisher because it exercised editorial control over messages on the board.

*Stratton* created an unacceptable paradox. If a service provider attempted to monitor content and missed a defamatory post, it opened itself to liability as a publisher. If it made no effort to monitor the content, it would avoid liability but create a proliferation of objectionable material. This prompted Congress to act, § 230 being the result. The aim of § 230, in the co-author's own words, was two-fold. First, it protected "computer Good Samaritans . . . who take[] steps to screen indecency and offensive material for their customers." 141 Cong. Rec. H8470 (daily ed. Aug 4, 1995). Second, it avoided "content regulation by the Federal Government of what is on the Internet." *Id.*

Section 230 prevents service providers from being subjected to publisher liability for screening objectionable material. Congress was concerned that deleting offensive posts would denote "publishing" and thus create liability. These concerns are inapplicable here. Craigslist created adult services, the section's five categories, and its word search function. Section 230 was not designed to shield service providers from liability for content they developed. Thus, subjecting Craigslist to liability would not undermine congressional aims.

**B.      The facts of this case remove it from the purview of 47 U.S.C. § 230.**

Section 230 does not protect websites from their own actions. Craigslist's adult services section was designed to be, and functions as, a forum for parties seeking to engage in illegal activity. Craigslist enhanced its creation by enabling users to search based on their sexual proclivity. (Compl. at ¶ 24.) Craigslist has different categories for individuals to post and search in. *Id.* The site has implemented a word search function to streamline the search process. (Compl. at ¶ 26.) Thus, Craigslist's interactions remove it from § 230. Craigslist invites advertisements for unlawful transactions, and through its word search features, the subcategories it maintains ("women for men", "men for men", "transvestites for men"), and its $10 fee, Craigslist promotes and profits from prostitution. Craigslist's affirmative acts facilitate prostitution by providing consumers with anonymity, convenience, and the availability of prostitutes.

Craigslist's Motion avoids this dispositive issue. In the twenty-five pages of argument, it does not address whether the adult services section, subcategories, and word search function are content developed by Craigslist. Like a broken record, the Complaint pointed to Craigslist's development of these three components. Craigslist's tepid response: "Plaintiff seeks to treat craigslist as a publisher of third-party content." (Mot. at 15.) Fixating on third party users, Craigslist never once references the twenty-one categories or word search function.

C.     **Craigslist's case law does not support its 47 U.S.C. § 230 argument.**

While many cases address § 230, none are analogous. This is a matter of first impression. Never before has a website invoked the Communications Decency Act to escape liability for facilitating prostitution.

1.     **This case does not involve defamation.**

Craigslist seeks to dismiss a different case. Section 230 was not intended to facilitate illegal conduct. Nor was it designed to make websites untouchable. Yet these are Craigslist's contentions. Craigslist's broad immunity theory falters because the third party content element is absent. Instead, information developed by Craigslist is at issue. The cases cited by Craigslist do not involve allegations that the defendant developed information. (Mot. at 10-12.) Accordingly, none are persuasive.

Craigslist relies on the first case that considered § 230, *Zeran v. America Online*, 129 F.3d 327 (4th Cir. 1997). The plaintiff sued America Online ("AOL") for negligence because AOL delayed in removing defamatory messages. The Fourth Circuit held plaintiff's attempt to impose liability on AOL was foreclosed by the "broad immunity" of § 230. *Id*. at 331. Another case cited by Craigslist is *Green v. America Online*, 318 F.3d 465 (3d Cir. 2003). *Green* also involved allegations that AOL failed to police its network for harmful third party messages. The plaintiff could not overcome § 230 because he never alleged that AOL developed the content. Also inapt is *Ben Ezra v. America Online*, 206 F.3d 980 (10th Cir. 2000). The plaintiff sought to hold AOL responsible for a third

party's inaccurate stock information. The court rejected plaintiff's theory that AOL was a content provider because it occasionally corrected stock errors.

The defamation, negligence, and false information cases cited by Craigslist need not be distinguished. They distinguish themselves. The case at bar involves a website developing a forum for selling sex. The gravamen of the Complaint is affirmative acts by Craigslist. Creating the adult services forum, its subcategories, and word search function were not done by third parties. These facts render Craigslist's legal support nugatory. Moreover, this case is not name-calling in a chatroom. It is human trafficking and child exploitation. That Craigslist ignores this factual chasm is remarkable.

## 2. Non-defamation cases demonstrate that 47 U.S.C. § 230 is inapplicable.

Section 230 cases outside the defamation paradigm are limited. Craigslist spends nine pages explaining § 230 immunity and its "broad" reach. (Mot. at 10-18.) But its analysis is incomplete. Craigslist views § 230 immunity in an unrealistically sanguine light. Case law from the Seventh, Ninth, and Eleventh Circuits demonstrates a retrenchment from *Zeran's* broad immunity. Because Craigslist takes a one-sided view of § 230 case law, an in-depth analysis is necessary.

### a. *Doe v. GTE Corp.*, 347 F.3d 655 (7th Cir. 2003).

*Doe* involved claims against a web hosting service that posted images of athletes unknowingly recorded in a locker room. *Doe*, 347 F.3d at 656. The district court dismissed the suit based on § 230. *Id.* While the Seventh Circuit affirmed on state law grounds, it criticized *Zeran*, questioning why federal legislation entitled "[p]rotection for 'Good Samaritan' blocking and screening of offensive material" would protect those who did no screening at all. *Id.* at 660. The Seventh Circuit suggested that § 230(c)(1) might not be an immunity-granting section, but a "definitional clause" that clarified other provisions of the law. Under this "definitional" reading of § 230(c)(1), an entity "would become a 'publisher or speaker' and lose the benefit of § 230(c)(2) if it created the objectionable information." *Id.*

The Seventh Circuit's disagreement with *Zeran* is well-founded. *Zeran* holds that service providers are immune from suit whenever they alter content. But by altering content, a computer service would no longer be posting information provided by "another content provider." As § 230(c)(1) protects a website only when it takes no active role in manipulating or facilitating the third party content, *Doe* was correct.

**b. *Chi. Lawyers' Comm. For Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666 (7th Cir. 2008).**

*Zeran's* broad immunity was also questioned by *Chicago Lawyers' Committee* ("*CLC*"). Ironically, Craigslist's Motion invokes *CLC* for support: "the Court of Appeals for this Circuit in a case against Craigslist, … held that Section 230 broadly protects online service providers." (Mot. at 2.) In *CLC*, the plaintiff sued Craigslist for discriminatory posts in the website's housing section. *CLC*, 519 F.3d at 668. The district court found § 230 applied because Craigslist merely published the postings. *Id.* at 669. But the district court rejected the conclusion that § 230(c)(1) "does not bar 'any cause of action,' as *Zeran* holds and as Craigslist contends." *Chi. Lawyer's Comm.*, 461 F. Supp. 2d 681, 693 (N.D. Ill. 2007). The court concluded *Zeran* "overstates" the statute's breadth by holding § 230 "creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Id.* (quoting *Zeran*, 129 F.3d at 330).

The Seventh Circuit affirmed but again criticized *Zeran*. It reiterated that § 230 was not a "general prohibition of civil liability for web-site operators and other online content hosts." *CLC*, 519 F.3d at 669. The court was blunt, "[s]ubsection (c)(1) does not mention 'immunity' or any synonym." *Id.* The broad immunity argument in Craigslist's Motion was rejected by the Seventh Circuit as expanding "§ 230(c)(1) beyond its language" and having little "support in the statutory text." *Id.* at 669-70. Thus, *CLC* stands for the precise opposite of what Craigslist asserts.

*CLC* is factually distinguishable as well. It involved a few isolated discriminatory posts out of thousands in Craigslist's housing section. Adult service postings consist

almost exclusively of illegal services. While the *CLC* plaintiff sought to hold Craigslist liable for not finding a third party's needle in the haystack, the Sheriff seeks to hold Craigslist liable for the haystack it built. Third party posts, not Craigslist's housing section, were the focus in *CLC*. Here, it is not third party posts but Craigslist's adult services section. Additionally, while a housing forum is not inherently illegal, the *raison d'être* of adult services is sexual services, and under Illinois law, this is prohibited. For Craigslist to claim "no material distinction between the facts" of this case and *CLC* is to ignore reality. (Mot. at 11.) Unlike *CLC*, content developed by Craigslist galvanized this suit. Adult services and its subcategories are the housing equivalent of a "whites only" or "gays only" section. Such forums are illegal, and Craigslist would not be immune in creating them.

**c.**     *Fair Hous. Council v. Roommates.com,* **521 F.3d 1157 (9th Cir. 2008) (en banc).**

The Fair Housing Council alleged Roommates.com permitted discrimination violating the Fair Housing Act. *Roommates,* 521 F.3d at 1162. The district court dismissed the suit because the site was a service provider protected by § 230. *Id.* at 1161 n.1. The Ninth Circuit, en banc, disagreed. By an 8-3 vote, the court found immunity was not proper because the site created much of the problematic content. *Id.* at 1164-66. Roommates required users to identify themselves by gender and sexual preference, using that information to contact customers with those preferences. *Id.* at 1161. This troubled the court. "By requiring subscribers to provide the [discriminatory] information as a condition of accessing its service, and by providing a limited set of pre-populated answers," Roommates became a content provider. *Id.* at 1166.

The key commonality between the instant facts and *Roommates* is the websites' level of involvement. Like *Roommates,* Craigslist does more than act as a mere publisher of third party posts. Craigslist developed adult services, its subcategories, and a word search function. As the Ninth Circuit explained, "if you don't encourage illegal content,

or design your website to require users to input illegal content you will be immune." *Id.* Creating adult services and its subcategories ignores this admonition.

<h4>d.    The Eleventh Circuit limits 47 U.S.C. § 230 immunity.</h4>

The Seventh and Ninth Circuits are not the only jurisdictions wary of the "broad immunity" reading of § 230. The Eleventh Circuit displayed a similar skepticism in *Almeida v. Amazon.com*, 456 F.3d 1316 (11th Cir. 2008) and *Whitney v. Xcentric*, 199 Fed. Appx. 738 (11th Cir. 2006) (unpublished).

The Eleventh Circuit addressed whether the CDA immunized Amazon from a right-of-publicity claim in *Almeida v. Amazon.com*. While the holding was not based on § 230, the court noted that § 230(c)(1) was "phrased as a definition." *Almeida*, 456 F.3d at 1322, n.3. In other words, the Eleventh Circuit did not read the subsection as conferring immunity.

In *Whitney*, The Eleventh Circuit vacated the district court's order granting a website's motion to dismiss. *Whitney*, 199 Fed. Appx. at 744. The Eleventh Circuit remanded because it was unclear whether § 230 immunity was implicated. *Id.* The court cited the allegations of "Defendants' involvement in creating or developing the alleged defamatory content of consumer complaints posted on their website." *Id.* The defendants' additions of words such as "ripoff," "dishonest," and "scam" provided the blueprint for precluding § 230 immunity. Because these allegations had not been rebutted, remand was necessary.

The district court eventually determined the site was not a content developer. *Whitney*, 2008 U.S. Dist. LEXIS 11632, *39 (M.D. Fla. 2008). But this finding must be viewed in context. The underlying content here is criminal, unlike the defamatory posts in *Whitney*. Craigslist knows prostitution occurs and profits from each post. Finally, the district court did not have the benefit of considering *Chicago Lawyers' Committee* or *Roommates*, as both were issued after the district court's decision. More importantly, three lessons can be gleaned from the Eleventh Circuit's opinion in *Whitney*. First, a service provider could lose § 230 protection if it adds titles and headings to third party

posts. *Id.* at 743. Second, a service provider bears the burden of rebutting such allegations. *Id.* Third, the emphasis on partial responsibility for information development suggests that peripheral contributions to third party content can create liability. *Id.* at 743-44. The Eleventh Circuit's determinations contravene Craigslist's position.

e.    <strong>Trial court case law demonstrates Craigslist's liability.</strong>

Rejecting § 230 immunity transcends the appellate realm. A fact pattern similar to the instant case is *MCW, Inc. v. Badbusinessbureau.com,* 2004 U.S. Dist. Lexis 6678 (N.D. Tex. 2004). Defendant website monitored untrustworthy businesses, soliciting reports from spurned third party consumers. The website created report titles such as "Con Artists," "Scam," and "Ripoff." *Id.* at *32 n.10. It also organized the reports under headings, similar to the adult services section and its subcategories, such as "Con Artists" and "Corrupt Companies." *Id.* at *32. The court held the website's development of this information precluded § 230 immunity. *Id.* at *36.

A similar conclusion was reached in *Hy Cite Corp. v. Badbusinessbureau.com*, 418 F. Supp. 2d 1142 (D. Ariz. 2005). Persons accessing defendant's website could view Rip-off Reports, make comments, or post their own. *Id.* at 1145. An implicated business sued and the court held the site could not invoke § 230 immunity because "wrongful content appears on the Rip-off Report website in editorial comments created by Defendants and titles to Rip-off Reports." *Id.* at 1149. *Hy Cite* and *MCW* instruct that Craigslist is liable here.

Another factually analogous case is *NPS, LLC, v. StubHub, Inc.*, 2009 Mass. Super. LEXIS 97 (Mass. Supp. 2009). A football team sued a website that allowed third party users to sell tickets. *Id.* at *5-6. Sellers could list their tickets in categories provided by the website. Defendant argued that it was simply an online forum for ticket selling. But the court held this was "not enough to establish that it does not engage in improper means." *Id.* at *28. The defendant also argued it was not liable, like Craigslist, because it provided a user agreement containing warnings about anti-scalping laws. This

argument was to no avail: "in seeking to prove that StubHub knowingly aided the commission of illegal conduct, [plaintiff] is not limited to what StubHub said; it may also focus carefully on what it did." *Id*. at *32. The court also rejected the website's § 230 argument, finding "evidence in the record that StubHub materially contributed to the illegal 'ticket scalping' of its sellers." *Id*. at *36-37. *NPS* offers a blueprint for denial of Craigslist's Motion. Craigslist highlights the site's Terms of Use, which prohibit offers of prostitution. (Mot. at 3.) But these warnings do nothing to deter users, and per *NPS*, provide no excuse for Craigslist to look the other way.

A final example is *Anthony v. Yahoo*, 421 F. Supp. 2d 1257 (N.D. Cal. 2006). Plaintiff claimed that the service provider created false profiles on its site. *Id*. at 1259. Yahoo argued that the CDA barred the plaintiff's fraud and negligent misrepresentation claims. The court disagreed, explaining "no case of which this court is aware has immunized a defendant from allegations that it created tortious content." *Id*. at 1263.

These factually similar trial court decisions stymie Craigslist's position. Creating sections and organizing content rendered these websites content providers. The same logic applies here. The fundamental flaw of Craigslist's Motion is that it places a childlike faith in *Zeran*'s broad immunity reading. The above cases eviscerate this theory.

D.     **Craigslist's broad immunity argument is not supported by the text or history of 47 U.S.C. § 230.**

Even an expansive reading of § 230 provides no support for the contention that websites are immune from suit for content they developed or facilitated. The reason is clear. With accountability held in abeyance, defamation, nuisance, and criminal laws can be flouted. In fact, per Craigslist's interpretation, websites can seek out and post objectionable material without repercussion. The CDA did not intend to insulate service providers from responsibility where they developed information that facilitates prostitution. Although Craigslist has provided a lengthy analysis of § 230, it has not answered a question posed by the Seventh Circuit: "Why should a law designed to

14

eliminate [service providers'] liability to the creators of offensive material end up defeating claims by the victims of tortious or criminal conduct?" *Doe*, 347 F.3d at 660. Craigslist's interpretation of § 230 vaults service provider protection over the exploitation of young women.

While the Internet has ushered in a new era, crossing the online threshold does not erase liability. The plank of the broad immunity reading, *Zeran*, has been warped. *See Chicago Lawyers' Committee*, 519 F.3d 666. Additionally, the failings of broad immunity are heightened when the underlying content is criminal. Craigslist's cases lack persuasion because none have similar facts. Libel, slander, and discriminatory housing posts are civil wrongs. Prostitution, child exploitation, and human trafficking are criminal wrongs. Because Craigslist maintains an adult services section, multiple subcategories, and a word search function, it develops the content causing the nuisance.

IV.  **Even if Craigslist is not an Information Content Provider, It Knowingly Provides for Illegal Conduct.**

Craigslist's creation of adult services has provided a specific forum for individuals to conveniently sell sex. This has led to a mainstreaming of prostitution in Cook County. Abuse, rape, and drug use are additional by-products, the epitome of nuisance. (*See* June 10, 2009 letter from 26 members of Congress to Craigslist, attached as Exhibit 1, "the number of crimes that may result from your site could be staggering.") Craigslist chides the Sheriff for including "the actual content of only twelve user postings." (Mot. at 6.) Craigslist conveniently ignores Exhibit C which included the titles of almost one thousand posts. A cursory review of those titles leaves nothing to the imagination. The new adult services section is thriving and its posts confirm what is being offered, sex for money. (*See* adult services posts, attached as Exhibit 2.)

"A public nuisance . . . encompasses any unreasonable interference with a right common to the general public." 58 Am. Jur. 2d *Nuisances* § 31, at 592 (2002). While Craigslist does not attack the underlying nuisance theory, it scoffs at the notion that the

Sheriff would "retain a private law firm" rather than use "traditional law enforcement tactics to pursue those actually involved in prostitution." (Mot. at 1.) These contentions are incorrect. First, counsel represents the Sheriff *pro bono*. Second, "traditional law enforcement tactics" are futile in the face of Craigslist's popular forum. To combat prostitution while ignoring the largest source in the country is like trying to stop a flood without finding where the water is coming from.

Craigslist argues that prostitution predates the Internet and that there is no evidence prostitution has increased because of Craigslist. (Mot. at 4.) These claims miss the point. It is Craigslist's role in streamlining prostitution and making it accessible that is the issue. Craigslist is the largest source of prostitution in the country. And while shutting down adult services would not make prostitution disappear, it would make the act more difficult and inconvenient.

A.    **Websites are responsible for unlawful content.**

A review of Craigslist's Motion might leave the reader with the impression that content on websites can never be prohibited. Yet, precedent exists for outlawing online content. Online gambling is illegal. 31 U.S.C. § 5361. Music file sharing is prohibited. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001). Prostitution should not be allowed to escape prohibition, let alone flourish.

Instructive on this point is *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster*, 545 U.S. 913 (2005). Defendant distributed free software products that allowed users to download copyrighted music files. Plaintiff sued defendant for its users' copyright infringement, alleging that it knowingly distributed software to enable users to reproduce copyrighted works. *Id.* at 920-21. The Court held for plaintiff, noting that where a "widely shared service or product is used to commit infringement, it may be impossible to enforce rights in the protected work effectively against all direct infringers, the only practical alternative being to go against the distributor of the copying device for secondary liability." *Id.* at 929. *Grokster* demonstrates that websites are liable when they facilitate the illegal actions of their users.

**B.      Craigslist knows adult services is used for sex-related services.**

Craigslist's facilitation of prostitution has been widely criticized. Connecticut Attorney General Richard Blumenthal explained, "like any bricks and mortar establishment, Craigslist has the responsibility and power to prohibit prostitution." (*See AGs Call for More Oversight of Web Ads After So-Called Craigslist Murder,* A.B.A. J., attached as Exhibit 3.) Missouri Attorney General Chris Kostner called the prostitution ads "blatant, irresponsible, and illegal." (*See U.S. State's Attorneys Have a Date With Craigslist,* AFP, attached as Exhibit 4) Despite the onslaught of evidence, Craigslist refuses to see the obvious. Craigslist CEO Jim Buckmaster states, "I would not describe any section of our site as sex related." (*See Craigslist CEO: Our site is not sex-related,* Boston Globe, April 22, 2009, attached as Exhibit 5.) This claim is beyond parody.

Craigslist fixes its eye on the silver lining and ignores the cloud. In the midst of murders, media attention, and outraged attorneys general, Craigslist highlights its usefulness in helping users develop friendships. (Mot. at 1.) But this ostrich-like response will not make the problems disappear. Adult services is the most popular section of the site. Without it, Craigslist would lose significant site traffic. A classified industry analyst explained, "it is the erotic offerings that boost traffic and have helped turn Craigslist into a big moneymaker by bringing more people to the site." (*See Craigslist known as aid and enabler,* Boston Globe, April 22, 2009, attached as Exhibit 6.) This loss would undermine its ability to charge up to $75 per post for employment ads and foreclose its $10 per adult services post revenue stream. This $10 fee has brought in an estimated $2,550,000 profit in one month, and is projected to make Craigslist almost $18 million for the last seven months of 2009. (*See Craigslist tops $100 million revenue,* at 1, AIM Group's Classified Intelligence Report, attached as Exhibit 7.)

Craigslist's claim that the Sheriff is forcing it to engage in "quintessential publishing functions" (Mot. at 16) is incorrect. The Sheriff is not seeking to hold Craigslist liable for not implementing more protective measures, as in *Doe v. MySpace,* 582 F.3d 413 (5th Cir. 2008). Rather, it is Craigslist's adult services section and multiple

categories that are the problems. Thus, lack of screening is a *non sequitor*. It is the section itself that merits scrutiny, not the posts.

If users posted prostitution ads in the housing or automotive sections of the site, Craigslist's argument would have merit. But this is not about isolated posts straying into unintended forums. Indeed, users sell drugs on Craigslist. (*See Artifact: At least one market's doing fine*, New York Magazine, December 8, 2008, attached as Exhibit 8.) But the Sheriff is not seeking to hold Craigslist liable for such posts, as Craigslist does not provide a narcotics forum. Craigslist does provide a forum used by millions for prostitution. Thus, it cannot escape liability.

## V.     The Relief Sought Does Not Implicate Prior Restraint Concerns.

Craigslist points to no authority suggesting prostitution or its advertising is constitutionally protected. None exists. Instead, Craigslist claims that an injunction closing the adult services forum is an "unconstitutional prior restraint." (Mot. at 23.) This argument is imperiled by Craigslist misconstruing prior restraint.[2]

Prior restraints are disfavored. *New York Times Co. v. United States*, 403 U.S. 713, 714 (1971). The reason for this disdain demonstrates why Craigslist's prior restraint argument is unfounded: "[a] free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand." *Se. Promotions v. Conrad*, 420 U.S. 546, 559 (1975). Beyond the distinction that Craigslist's prior restraint case law involved protected speech, these cases also involved restrictions made before the speech. This distinction eviscerates Craigslist's argument because Craigslist's facilitation of prostitution has occurred since 2003 and continues to occur.

A brief review of Craigslist's reliance exemplifies this point. In *Se. Promotions*, a theatre promoter applied for a permit to present a musical production. *Id.* at 547. Based

---

[2] Craigslist's contention that the Sheriff cannot recover damages would be rendered moot if the Court permits the Motion for Joinder and Leave to Amend the Complaint, simultaneously filed with this Response. If it does, the Complaint will be amended to include two non-profit groups, Women Of Power Alumni Association and Dream Catcher Foundation. These organizations are directly impacted by Craigslist's facilitation of prostitution. They have incurred costs in working with and providing rehabilitation services to victims of prostitution who were advertised on Craigslist. (*See* Motion for Joinder and Leave to Amend the Complaint).

on reports that the production was obscene, the municipal board refused the permit. This was a prior restraint because the board "denied the application in anticipation that the production would violate the law." *Id.* at 555. Craigslist also cites *Collins v. Jordan*, 110 F.3d 1363 (9th Cir. 1996), which involved a San Francisco police decision to ban all planned demonstrations. *Id.* at 1370-71. *Collins'* instruction — that it is better to punish "unlawful conduct that may be intertwined with First Amendment activity … after it occurs" — is thus inapplicable. (Mot. at 24.)

Similarly distinguishable is *Weinberg v. City of Chi.*, 310 F.3d 1029 (7th Cir. 2003). That case involved a licensing scheme for peddling that gave city officials "unbridled discretion." *Id.* at 1045. The most instructive case cited by Craigslist, *Alexander v. United States*, 509 U.S. 544 (1993), rejected an argument similar to Craigslist's. The defendant argued that a forfeiture of his property after he was criminally convicted amounted to an injunction enjoining future speech. *Id.* at 546. The Court described this argument as stretching prior restraint "well beyond the limits" and obliterating the distinction "between prior restraints and subsequent punishments." *Id.* at 550. This depicts Craigslist's prior restraint argument.

Facilitating prostitution and its advertising is not constitutionally protected. Even if the Court disputes this assertion, no prior restraint exists because Craigslist has already acted. Erotic services and its subcategories have existed for over five years. (Compl. at ¶ 19.) Thus, the injunctive relief does not constitute a prior restraint.

Craigslist's other contentions in the waning pages of its brief also fail. Craigslist argues that closing adult services "would only increase the likelihood that wrongdoers will abuse" the site by using other Craigslist categories. (Mot. at 24.) Craigslist's "self-policing policy" aside, it is Craigslist's responsibility to its users that sections remain free of unwanted, irrelevant, or illegal posts. Craigslist has the resources to do so; its significant revenues can increase the staff, which consists of approximately twenty-four individuals. It is untenable that Craigslist creates adult services, makes over $2 million a

month, and never deals with the consequences. Taxpayers and non-profit groups should not be left to subsidize the costs of prostitution.

<h2 style="text-align:center">CONCLUSION</h2>

The chasm between the parties' positions is twofold. First, Craigslist believes § 230 immunizes websites that develop content facilitating criminal acts. The Sheriff contends that websites cannot evade responsibility for developing such content. Second, Craigslist downplays the seriousness of prostitution. It is difficult to imagine Craigslist's ostrich-like approach if ads for drugs or hit men were as rampant as those for prostitution. The Sheriff has a different perspective, given his interaction with victims of prostitution, human trafficking, and child exploitation.

Accountability should not be sacrificed at the altar of Internet growth when human rights are at stake. If Craigslist were a brick and mortar business, it would not be able to get away with its actions. Although Craigslist acts on a virtual plane, it is as if Craigslist built a house, affixed a sign advertising sexual services, designated floors for different sexual proclivities, and charged the inhabitants rent. Craigslist cannot use the façade of the Internet to do what it never could in the non-virtual world.

Because Craigslist has not carried its burden, the Court should deny Craigslist's Motion for Judgment on the Pleadings.

Respectfully submitted,

The Sheriff of Cook County.

By: s/ Daniel F. Gallagher
    One of the Sheriff's attorneys

    Daniel F. Gallagher
    Paul O'Grady
    Christopher P. Keleher
    Querrey & Harrow, Ltd.
    175 West Jackson Blvd., Suite 1600
    Chicago, IL 60604
    (312) 540-7000