IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS DART, SHERIFF OF COOK COUNTY, | ) ) ) | |
| Plaintiff | ) ) | Judge John F. Grady |
| v. | ) ) | Magistrate Judge Nan R. Nolan |
| CRAIGSLIST, INC. | ) ) | Case No. 09 CV 1385 |
| Defendant. | ) ) | |

## CRAIGSLIST'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS

*Counsel for craigslist, Inc.*

Eric D. Brandfonbrener
Elizabeth L. McDougall
Kathleen A. Stetsko
PERKINS COIE LLP
131 S. Dearborn, Suite 1700
Chicago, IL 60603
Tel: (312) 324-8400

Patrick J. Carome
Samir Jain
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
Tel: (202) 663-6000

# TABLE OF CONTENTS

|  |  |  | Page |
|---|---|---|---|
| INTRODUCTION | | | 1 |
| PROCEDURAL POSTURE | | | 2 |
| ARGUMENT | | | 4 |
| I. | Section 230 Bars Plaintiff's Claims | | 4 |
| | A. | The Allegedly Unlawful Advertisements Were "Information Provided by Another Information Content Provider" | 5 |
| | | 1. Subject Categories | 7 |
| | | 2. Word Search Function | 10 |
| | B. | Plaintiff Offers No Other Basis to Evade Application of Section 230 | 11 |
| | | 1. Section 230 Provides Protection Regardless of Whether the Third-Party Content Is Constitutionally Protected | 11 |
| | | 2. Section 230 Is Not Limited to Defamation | 12 |
| | | 3. Section 230 Applies Even if the Third-Party Content Allegedly Violates State Criminal Law | 12 |
| II. | Plaintiff's Proposed Remedies Are Barred as a Matter of Law | | 13 |
| | A. | Illinois Law Bars Plaintiff's Claim for Monetary Relief | 13 |
| | B. | The First Amendment Bars Plaintiff's Claim for Injunctive Relief | 14 |
| CONCLUSION | | | 15 |

# TABLE OF AUTHORITIES

Page

**Cases**

*Anthony v. Yahoo!*,
  421 F. Supp. 2d 1257 (N.D. Cal. 2006) .................................................................. 9

*Atlantic Recording Corp. v. Project Playlist, Inc.*,
  603 F. Supp. 2d 690 (S.D.N.Y. 2009) ..................................................................... 9

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 ......................................................................................................... 12

*Carafano v. Metrosplash.com, Inc.*,
  339 F.3d 1119 (9th Cir. 2003) ........................................................................... 6, 11

*Center for Democracy & Technology v. Pappert*,
  337 F.Supp. 2d 606, 633 (E.D. Pa. 2004) .............................................................. 15

*Chicago Lawyers' Committee for Civil Rights Under Law, Inc. v. craigslist, Inc.*,
  519 F.3d 666 (7th Cir. 2008) ........................................................................... passim

*City of Chicago v. Beretta USA*,
  821 N.E.2d 1099 ................................................................................................ 13-14

*Corbis Corp. v. Amazon.com*,
  351 F. Supp. 2d 1090 (W.D. Wash. 2004) ......................................................... 6, 13

*Doe II v. MySpace, Inc.*,
  96 Cal. Rptr.3d 148 (Cal. Ct. App. 2009) .............................................................. 13

*Doe IX v. MySpace, Inc.*,
  No. 4:08-CV-140, 2009 WL 1457170 (E.D. Tex. May 22, 2009) ..................... 8, 13

*Doe v. America Online, Inc.*,
  783 So.2d 1010 (Fla. 2001), *cert. denied*, 534 U.S. 891 (2001) ........................... 11

*Doe v. Bates*,
  2006 WL 3813758 (E.D.Tex. 2006) ....................................................................... 12

*Doe v. GTE*,
  347 F.3d 655 (7th Cir. 2003) .................................................................................. 11

*Doe v. MySpace, Inc.*,
  528 F.3d 413 (5th Cir. 2008) .................................................................................. 12

*Fair Housing Council of San Fernando Valley v. Roommates*.com,
  521 F.3d at 1165 ............................................................................................... 8-9, 10

*Gentry v. eBay, Inc.*,
  99 Cal. App. 4th 816 (2002) ................................................................................. 6, 8

*Gibson v. craigslist, Inc.*,
  No. 08 Civ. 7735, 2009 WL 1704355 (S.D.N.Y. June 15, 2009) .................. 4, 7, 13

*Global Royalties, Ltd. v. Xcentric Ventures LLC*,
  544 F.Supp.2d 929 (D. Ariz. 2008) .......................................................................... 8

*Goddard v. Google, Inc.*,
  No. 08-2738, 2009 WL 2365866 (N.D. Cal. July 30, 2009) .................................... 9

*GW Equity LLC v. Xcentric Ventures LLC*,
  Civ. Action No. 3:07-CV-976-O, 2009 WL 62173 (N.D. Tex. Jan. 9, 2009) ........... 6

*Hy Cite Corp. v. BadBusinessBureau.com, L.L.C.*,
   418 F. Supp. 2d 1142 (D. Ariz. 2005) ............................................................................... 9

*IDK, Inc. v. County of Clark*,
   836 F.2d 1185 (9th Cir. 1988) ........................................................................................... 8

*In re Globe Bldg. Materials, Inc.*,
   463 F.3d 631 (7th Cir. 2006) ........................................................................................... 13

*MCW, Inc. v. BadBusinessBureau.com, L.L.C.*,
   No. Civ.A.3:02-CV-2727-G, 2004 U.S. Dist. LEXIS 6678
   (N.D. Tex. Apr. 19, 2004) ............................................................................................. 6, 9

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster*,
   545 U.S. 913 (2005) ........................................................................................................ 13

*Near v. Minnesota*,
   283 U.S. 697 (1931) .................................................................................................. 14-15

*NPS, LLC v. StubHub, Inc.*,
   No. 06-4874-BLS1, 2009 Mass. Super. LEXIS 97
   (Super. Ct. Mass. Jan. 26, 2009) ...................................................................................... 9

*Universal Communication Systems, Inc. v. Lycos, Inc.*,
   478 F.3d 413 (1st Cir. 2007) ........................................................................................... 11

*Whitney Info. Network Inc. v. Xcentric Ventures, LLC*,
   No. 2:04-cv-47-FtM-34SPC, 2008 U.S. Dist. LEXIS 11632
   (M.D. Fla. Feb. 15, 2008) .......................................................................................... 6, 7-8

*Zeran v. American Online, Inc.*,
   129 F.3d 327 (4th Cir. 1997) ...................................................................................... 6, 12

**Statutes**

47 U.S.C. § 230(c)(1) ................................................................................................... passim

## INTRODUCTION

Plaintiff's baseless accusations and political posturing, the sole question presented to this Court by craigslist's Motion remains whether craigslist can be held liable for misuse by third parties of its online classified advertising services in connection with alleged unlawful activity, which if it occurred would have been in violation of craigslist's express policies and in spite of its extensive preventative measures. As craigslist's memorandum in support of its Motion for Judgment on the Pleadings established, craigslist cannot in fact be held so liable. Even assuming all of the facts alleged in the Complaint to be true, dismissal of this case is required as a matter of law, for two separate and independently sufficient reasons.

*First*, Plaintiff's suit is barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230, a statute that creates special protections for providers of interactive Internet services (as distinct from "brick and mortar" services) from liability for content authored by third parties. Plaintiff's Response does remarkably little even to attempt to contest that craigslist satisfies the three statutory requirements for Section 230(c)(1) protection. It does not address, much less rebut, craigslist's showing (1) that it is a "provider" of an "interactive computer service" and (2) that this suit seeks to "treat" craigslist as "a publisher or speaker" of the allegedly unlawful content. Plaintiff tries to join issue only with respect to the third (and last) requirement for Section 230 protection — namely, that the unlawful content at issue was created and developed by third parties, rather than the service provider itself. But on this point, as demonstrated in craigslist's opening brief and as confirmed below, Plaintiff's argument fails because the only content genuinely at issue in this case is postings allegedly soliciting prostitution that indisputably were created and developed entirely by third parties, not craigslist. *See infra* at 5-10. Plaintiff argues that craigslist should nevertheless be deemed the creator/developer of that content simply because it provides category and subcategory titles (*e.g.*,

"erotic" or "adult") under which users may place ads that comply with its terms of use, and a word search capability that is ubiquitous on the Internet. Plaintiff's position defies both settled law and common sense. Plaintiff's other efforts to circumvent craigslist's Section 230 defense — such as his suggestion that Section 230 is inoperative if the content at issue is not protected by the First Amendment or violates State criminal law — misread both Section 230 and the substantial body of precedent construing it. *See infra* at 11-13.

*Second*, dismissal of the Complaint is separately required because *all* of the relief sought in the Complaint is legally barred. Plaintiff mounts no response at all to craigslist's argument that controlling Illinois Supreme Court precedent precludes a governmental litigant, such as a Sheriff, from obtaining monetary relief in a case like this. Regarding the Complaint's demand for an injunction to permanently shut down part of the craigslist website, Plaintiff concedes that "prior restraints" on speech are presumptively invalid under the First Amendment, and confines himself to arguing that such an injunction would not be a prior restraint because it supposedly would not restrict future speech. This argument, however, founders on the obvious fact that such an injunction *would* inevitably restrict future speech — indeed that would be its sole impact.

## **PROCEDURAL POSTURE**

Certain events have transpired since craigslist filed this Motion three months ago. Neither party contends that these events have a material impact on the legal issues presented by this Motion. However, because Plaintiff's Response inaccurately describes some but not all of these events, craigslist summarizes them here as background. craigslist reiterates that these subsequent events do not alter the defects in Plaintiff's case, which mandate its dismissal.

Although, as craigslist established in its opening Memorandum, it is protected from liability with respect to Plaintiff's purported claim, craigslist voluntarily made certain changes to

its website (after craigslist filed its Motion) based on craigslist's discussions with government and law enforcement representatives. In particular, it terminated the "erotic" category and established a new "adult" category in which craigslist employs a manual review process as an additional means to deter users from posting ads that violate its Terms of Use. craigslist Mem. ("Mem.") at 3-4. craigslist continues to employ for this category preventative measures designed in collaboration with law enforcement for the now-closed erotic services category, including prominent warnings and prohibitions against posting ads soliciting prostitution, various blocking and screening technologies, specialized tools and procedures to assist law enforcement, requiring users to pay a fee with a valid credit card, and requiring users to provide a verified working telephone number. *See id.* at 4-6; *see also* craigslist Answer at Exs. 1, 3, 5 & 7. As with the previous erotic category, and similar to the telephone yellow pages and many other classified advertising venues, craigslist's purpose for having an adult services category is to provide a forum in which individuals may advertise lawful, adult services. *See Mem.* at 5-6.

The most recent changes to the website led to discussion between the parties' counsel, including during the hearing on May 13, about whether Plaintiff's claim was moot and would be voluntarily dismissed. To assist Plaintiff in understanding the changes, craigslist voluntarily provided documents and information responding to questions posed by Plaintiff. On June 8, Plaintiff moved [Dkt. No. 18] for an additional extension of time to respond to the present Motion, ostensibly to "enable the Sheriff to better determine if the case is indeed moot."

Evidently, Plaintiff is not satisfied with craigslist's voluntary actions, and he has elected to proceed with this action. His stated reasons for doing so are that, in his view, craigslist's voluntary changes are mere "linguistic legerdemain." Resp. at 2. The facts show otherwise, but

this is of no consequence here, because none of the arguments that craigslist advances in support of this Motion rely or depend on there having been any change to the website.[1]

Simultaneously with his Response, Plaintiff moved for leave to file an Amended Complaint [Dkt. No. 35]. The sole function of the proposed amendment was to try to add two non-profit organizations as plaintiffs. Aside from new allegations regarding these organizations, the proposed Amended Complaint was identical to the original. On July 16, the Court denied the motion for leave to amend [Dkt. No. 37]. Accordingly, in deciding the present Motion, the Court should focus on the original Complaint [Dkt. No. 1] and craigslist's Answer [Dkt. No. 11].[2]

## ARGUMENT

### I. SECTION 230 BARS PLAINTIFF'S CLAIMS.

As craigslist explained in its opening brief, courts across the country have uniformly concluded that § 230(c)(1) broadly immunizes interactive service providers from liability for third-party content. *See* Mem. at 10-13 (citing numerous appellate and trial court decisions adopting a broad construction of Section 230). Indeed, the Seventh Circuit has specifically held that *craigslist itself* is entitled to Section 230 protection with respect to claims based on ads posted on its service by third parties. *See Chicago Lawyers' Committee for Civil Rights Under Law, Inc. v. craigslist, Inc.*, 519 F.3d 666 (7th Cir. 2008) ("*CLC*"); *see also Gibson v. craigslist, Inc.*, No. 08 Civ. 7735, 2009 WL 1704355 (S.D.N.Y. June 15, 2009).

---

[1] Arguably, craigslist's voluntary closure of the erotic category renders at least Plaintiff's claim for injunctive relief — which seeks only the closure of the erotic category — moot. craigslist, however, is not pressing for dismissal on grounds of mootness at this time.

[2] Another non-profit organization, Coalition Against Trafficking in Women, moved for leave to appear as amicus curiae [Dkt. No. 32], tendering an oversized brief. The Court rejected the brief as tendered but granted that organization leave to file a much shorter amicus brief. [Dkt. No. 37] As the deadlines for that amicus brief and this Reply coincide, this Reply could not respond to any points that the amicus brief raised.

Plaintiff offers no basis for a contrary ruling in this case. He does not dispute that two of the three requirements for Section 230(c)(1) protection are met here: namely, that craigslist is a "provider or user of an interactive computer service," and that his claim seeks to treat craigslist as the "publisher or speaker" of the allegedly harmful content. 47 U.S.C. § 230(c)(1). Instead, Plaintiff contends only that, because craigslist's service delineates categories into which users can place advertisements and provides a word search capability, craigslist does not satisfy the third requirement for Section 230 protection — namely that the unlawful information at issue has been "provided by another information content provider." *Id.* But the fact that craigslist provides functionalities that make it easier for users to find ads relevant to their interests does not alter the undisputed fact that those ads — including the allegedly unlawful ones at issue here — are created and developed entirely by the third parties who post them, not craigslist.

Grasping for straws, Plaintiff also asserts various other novel arguments (addressed *infra*) that are directly contrary to Section 230's statutory language and precedent, including the Seventh Circuit's own decision in *CLC*. Accordingly, Section 230 bars Plaintiff's claims in their entirety, and his Complaint should be dismissed.

### A. The Allegedly Unlawful Advertisements Were "Information Provided by Another Information Content Provider."

Section 230 generally protects craigslist from liability for "any information provided by another information content provider." 47 U.S.C. § 230(c)(1). An "information content provider" is defined in the statute as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." *Id.* § 230(f)(3). Under these provisions, the critical question here is whether craigslist created or developed the particular content that is genuinely at issue — that is, the postings that allegedly solicited prostitution. As the Ninth Circuit explained, even if a

defendant "could be considered an information content provider" as to some information on its site, "the statute precludes treatment as a publisher or speaker for '*any* information provided by *another* information content provider.' The statute would still bar [the plaintiff's] claims unless [the defendant] created or developed *the particular information at issue*." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003)(emphasis added); *see also Corbis Corp. v. Amazon.com*, 351 F. Supp. 2d 1090, 1118 (W.D. Wash. 2004)(same); *Gentry v. Ebay, Inc.*, 99 Cal. App. 4th 816, 833 n.11 (2002)("We note the fact appellants allege eBay is an information content provider is irrelevant if eBay did not itself create or develop the content for which appellants seek to hold it liable. . . . The critical issue is whether eBay acted as an information content provider with respect to the information that appellants claim is false or misleading"); *Whitney Info. Network, Inc. v Xcentric Ventures, LLC*, No. 2:04-cv-47-FtM-34SPC, 2008 U.S. Dist. LEXIS 11632, at *44-45 (M.D. Fla. Feb. 15, 2008)("Even if [evidence] creates an issue of fact as to the question of whether [the defendant] was an information content provider of some other postings on the . . . website, this conflict would be insufficient to forestall summary judgment in this case on the basis of CDA immunity"); *MCW, Inc. v. Badbusinessbureau.com, L.L.C.*, No. Civ.A.3:02-CV-2727-G, 2004 U.S. Dist. LEXIS 6678, at *25 (N.D. Tex. Apr. 19, 2004); *GW Equity LLC v. Xcentric Ventures LLC*, Civ. Action No. 3:07-CV-976-O, 2009 WL 62173, at *7 (N.D. Tex. Jan. 9, 2009).

Here, even Plaintiff does not claim that craigslist created the allegedly unlawful prostitution ads. Rather, those ads were created by the users who posted them. *See, e.g.*, Cmplt. ¶ 11 ("site allows users to post listings"); *id.* at Exs. E & F (third-party ads). Such user-generated ads are the paradigm of third-party content to which Section 230 applies. *See, e.g., CLC*, 519 F.3d at 671-72 (holding that Section 230 foreclosed suit against craigslist with respect to allegedly unlawful housing ads posted on site); *Zeran v. American Online, Inc.*, 129 F.3d 327,

6

330-31 (4th Cir. 1997)(barring suit against service provider with respect to defamatory ad posted by third-party user); *Gibson*, 2009 WL 1704355 at **3-4 (dismissing suit against craigslist for allegedly unlawful gun ad).

Plaintiff nevertheless argues that craigslist should be deemed to have had a role in creating or developing the alleged prostitution ads because of two features of its service: the delineation of subject categories (and subcategories) into which users can place ads, and the word search functionality through which a user can search all ads on the service to find those containing a specified word or words. Resp. at 2, 7-9, 11. But neither of those two basic navigational functions — which are designed to help users find ads in which they are interested — renders craigslist responsible for creating the content of the ads themselves.[3]

### 1. Subject Categories

craigslist is not an "information content provider" of ad content merely because it delineates categories and subcategories such as "erotic" (or "adult") that users may select to classify the subject of their advertisements. Several courts have already squarely rejected the theory that creating categories for third-party content renders Section 230 inapplicable with respect to that content. In *Whitney*, the court rebuffed the argument that the defendants were responsible for the creation or development of defamatory posts on their websites because defendants "created *categories*, such as 'con artists', 'corrupt companies' and 'fake TV advertisements', from which a poster must make a selection to categorize his or her report as part of the submission process." 2008 U.S. Dist. LEXIS 11632 at *33-40 at *33-40 (emphasis

---

[3] A ruling that would deprive craigslist of protection under Section 230 on the theory that, by providing tools that make it easier for users to find content, it becomes a provider of content created third parties, would contravene one of Section 230's main purposes. Such a finding would discourage online service providers from developing tools to make their services easier and more efficient out of fear that doing so would give rise to liability. This would undermine Congress's express l policy "to promote the continued development of the Internet and other interactive computer services." 47 U.S.C. § 230(b)(1).

7

added); *see also Gentry*, 99 Cal. App. 4th at 820-21, 823, 831-32 (rejecting argument that, because eBay provides descriptive categories and subcategories into which users can post ads, eBay is not entitled to § 230 protection); *Doe IX v. MySpace, Inc.*, No. 4:08-CV-140, 2009 WL 1457170 (E.D. Tex. May 22, 2009); *Global Royalties, Ltd. v. Xcentric Ventures LLC*, 544 F.Supp.2d 929, 932-33 (D. Ariz. 2008).

As these courts have recognized, the availability of categories and subcategories into which users can place ads, profiles, or other similar information does not make a service provider responsible for the creation of that information. That is particularly the case where, as here, the categories in question are designed and intended to be used for lawful content, and any choice to misuse the categories to post unlawful content is made solely by the user. A category titled "erotic" (or "adult") services readily encompasses a wide variety of lawful activities, such as exotic dancing, massage services, erotic photography and videography services, phone chat lines, webcam services, and adult websites.[4] Moreover, craigslist makes abundantly clear that its categories are *not* intended for the posting of ads for prostitution, affirmatively prohibits such advertisements, and actively takes steps to prevent the posting of such ads. *See* Mem. at 4-5 & n.5.[5] Thus, this is far from a situation such as that posed in *Roommates.com*, in which the provider structured its site so as to *force* users to generate unlawful content. *See Fair Housing*

---

[4] As craigslist noted in its opening memorandum, "erotic" or "adult" services also can encompass lawful escort services. Mem. at 5-6. Although Plaintiff asserts that "escort services" are nothing more than a euphemism for unlawful prostitution (Resp. at 4), even Plaintiff's cases show that escort services are distinct from prostitution and can be lawful businesses. *See, e.g., IDK, Inc. v. County of Clark*, 836 F.2d 1185 (9th Cir. 1988) (rejecting constitutional challenge to ordinance regulating, but not prohibiting, escorts). Given the numerous types of lawful services that can be advertised as "erotic" or "adult" services, this category is not remotely analogous, as Plaintiff absurdly suggests (Resp. at 2), to a "Narcotics For Sale" category, into which virtually no lawful ads would logically fall.

[5] Likewise, the optional subcategories that were or are available in the erotic or adult categories (*e.g.,* m4w, w4m) do not specifically solicit or induce unlawful advertisements. Indeed, the same or similar subcategories are included in the "personals" section on the craigslist website, and even Plaintiff does not contend that the categorizations there solicit or facilitate prostitution. *See* Cmplt. Ex. A.

8

*Council of San Fernando Valley v. Roommates*.com, 521 F.3d 1157, 1165, 1166 & n. 19, 1169-70 & n. 26 (9th Cir. 2008); *Goddard v. Google, Inc.*, No. 08-2738, 2009 WL 2365866 at *3 (N.D. Cal. July 30, 2009) (explaining that in *Roommates.com*, "[t]he court emphasized repeatedly that the website lost immunity only by forcing its users to provide the allegedly discriminatory information as a condition of access"); *Atlantic Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 701 (S.D.N.Y. 2009).

Instead, this is a case in which the allegedly unlawful "posting was contrary to the website's express policies" and thus falls squarely within Section 230 immunity. *See Roommates*.com, 521 F.3d at 1171. As Judge Easterbrook explained in finding craigslist immune under Section 230 in *CLC*, in language equally applicable here, "[n]othing in the service craigslist offers induces anyone to post any particular listing or express a preference for discrimination; for example, craigslist does not offer a lower price to people who include discriminatory statements in their postings." *CLC*, 519 F.3d at 671-72.[6]

---

[6] The cases Plaintiff cites in support of his assertion that craigslist should be deemed an "information content provider" of the ads at issue (Resp. at 13-14) are clearly inapposite. In three of those cases, the defendant service providers were themselves alleged to have created and developed the tortious content at issue, such as by authoring defamatory comments. Here, in contrast, there is no allegation that craigslist created or developed the alleged prostitution ads. *See MCW*, 2004 U.S. Dist. LEXIS 6678 at *9 (claiming that "defendants themselves create, develop, and post original, defamatory information concerning" plaintiff); *Hy Cite Corp. v. BadBusinessBureau.com, L.L.C.*, 418 F. Supp. 2d 1142 (D. Ariz. 2005) (alleging that "wrongful content appears on the Rip-off Report website in editorial comments created by Defendants and titles to Rip-off Reports, which Defendants allegedly provide"); *Anthony v. Yahoo!*, 421 F. Supp. 2d 1257, 1262 (N.D. Cal. 2006) (alleging that Yahoo! itself created the particular false profiles at issue). Plaintiff's effort to analogize the instant case to *NPS, LLC v. StubHub, Inc.*, No. 06-4874-BLS1, 2009 Mass. Super. LEXIS 97 (Super. Ct. Mass. Jan. 26, 2009), also fails because in that matter StubHub allegedly actively encouraged users' unlawful ticket-scalping by offering favorable price reductions to users purchasing tickets to scalp on StubHub's service. Here, craigslist does not provide a price reduction or other incentive to encourage users to post adult ads -- to the contrary, while posting is free for most categories of the craigslist site, craigslist requires users to pay a fee to post in the adult services category.

9

## 2. Word Search Function

Nor does the craigslist site's word search function – which works in similar fashion for all categories and types of ads, including the housing ads that were at issue in the Seventh Circuit's decision in *CLC* holding craigslist immune – make craigslist the creator or developer of the ads on its site. Rather, that function is simply a generic navigational tool that assists users in finding content that matches their interests. As the Ninth Circuit explained in its *en banc* decision in *Roommates.com*, "[i]f an individual uses an ordinary search engine to query for a 'white roommate,' the search engine has not contributed to any alleged unlawfulness in the individual's conduct; providing neutral tools to carry out what may be unlawful or illicit searches does not amount to 'development' for purposes of the immunity exception." 521 F.3d at 1169; *see also id.* at 1176 n. 37 ("Nor would Roommate be the developer of discriminatory content if it provided a free-text search that enabled users to find keywords in the 'Additional Comments' of others, even if users utilized it to search for discriminatory keywords.").[7] Here, individual users decide what ads to post, and create and develop the entirety of each ads' content. Providing a word search function makes it easier for users to find ads created by third-party users, but does not make craigslist responsible for creating and developing the ads that its search function enables them to find.[8]

---

[7] By contrast, the *Roommates.com* court explained, a search function "designed to steer users based on discriminatory criteria" could fall outside the scope of Section 230 immunity. 521 F.3d at 1167. There is and can be no allegation that craigslist's neutral word search function, in which users select what terms to search, is "designed to steer" them to use unlawful criteria.

[8] At times, Plaintiff seems to be arguing that it is the category and subcategory titles themselves, rather than user postings, that are the "illegal content" that is at issue in this case. This is frivolous: as made clear above, there is nothing unlawful about words such as "erotic" or "adult", or about using them as titles to help organize a website carrying billions of postings.

### B. Plaintiff Offers No Other Basis To Evade Application of Section 230.

Each of Plaintiff's remaining arguments as to why craigslist is not entitled to the protections of Section 230 is clearly meritless and should be summarily rejected.

#### 1. Section 230 Provides Protection Regardless of Whether the Third-Party Content Is Constitutionally Protected.

Plaintiff argues that advertising for prostitution is not protected speech under the First Amendment, as if that somehow would render Section 230 inapplicable. Resp. at 3-5. Even assuming some or all of the speech at issue is unprotected by the First Amendment, however, that has no bearing on whether craigslist is entitled to protection under Section 230. Most obviously, as even Plaintiff acknowledges, Section 230 paradigmatically applies to claims of defamation, even though a false and defamatory statement clearly is not protected by the First Amendment. *See, e.g., Carafano*, 339 F.3d 1119; *Universal Communication Systems, Inc. v. Lycos, Inc.*, 478 F.3d 413, 419 (1st Cir. 2007). Likewise, Section 230 has been applied to all manner of claims based on other types of third-party content that is not protected by the First Amendment. *See, e.g., Doe v. America Online, Inc.*, 783 So.2d 1010, 103-17 (Fla. 2001), *cert. denied*, 534 U.S. 891 (2001) (chat room advertisements for child pornography). Indeed, if Section 230's protections were limited to only content that was protected by the First Amendment, then it would be largely superfluous: because speech protected by the First Amendment generally cannot be proscribed or punished, a service provider would not face liability for carrying such speech and would not need Section 230 immunity in the first place.[9]

---

[9] Plaintiff further errs in his attempt to deprive Section 230(c)(1) of any operative effect by pointing to *dicta* in *Doe v. GTE*, 347 F.3d 655, 660 (7th Cir. 2003), in which the court asks whether Section 230(c)(1) is merely "definitional." Resp. at 9-10. However, as shown by the subsequent *CLC* decision, the Seventh Circuit joined the other Circuits in finding Section 230(c)(1) provides affirmative protection to online service providers. In *CLC*, the appellate court upheld the district court's decision finding craigslist immune under Section 230(c)(1). As the court explained, "[a] natural reading of § 230(c)(1) ... led [the district] court to grant summary judgment for craigslist." 519 F.3d at 671.

### 2. Section 230 Is Not Limited to Defamation.

Plaintiff also suggests that Section 230 protects online providers only from defamation claims. Resp. at 8-9. But even Plaintiff concedes that many cases have applied Section 230 to other claims. Indeed, the Seventh Circuit in *CLC* found craigslist immune from a discrimination claim – that binding precedent alone makes clear that Section 230 is not limited to defamation. As craigslist explained in its opening brief, courts have consistently explained that "§ 230 creates a federal immunity to *any cause of action* that would make service providers liable for information originating with a third-party user of the service." *Zeran*, 129 F.3d at 328; *see also Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101 (9th Cir. 2009) ("[T]he language of the statute [Section 230] does not limit its application to defamation cases."); *Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008) (applying § 230 to claims of fraud, misrepresentation, and negligence).

### 3. Section 230 Applies Even if the Third-Party Content Allegedly Violates State Criminal Law.

At various points, Plaintiff appears to suggest that Section 230 does not apply because solicitation of prostitution is a state criminal offense. Resp. at 5-6, 12, 15. But that is incorrect. Section 230 expressly provides that "[n]o cause of action may be brought and no liability may be imposed under *any* State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3) (emphasis added). Moreover, although Section 230 contains an exception for the "enforcement" of "*Federal* criminal statute[s]," *id.* § 230(e)(1) (emphasis added), it contains no such exception for *state* criminal laws, such as those that ban prostitution.[10] Under the principle

---

[10] Although the Complaint alleges that the ads in question also violate a federal statute (Cmplt. at ¶¶ 116-26), as a local sheriff, Plaintiff clearly has no authority to enforce federal laws and, in any event, his civil suit under Illinois nuisance law cannot be said to constitute "enforcement" of a "federal criminal statute." *See, e.g., Doe v. Bates*, 2006 WL 3813758 (E.D.Tex. 2006) (civil suit based on alleged violation of federal criminal child pornography statute does not fall within exception for enforcement of federal criminal laws and is barred by Section 230).

12

of *expressio unius est exclusio alterius*, the express listing of certain exceptions implies the absence of any other exceptions. *See, e.g., In re Globe Bldg. Materials, Inc.*, 463 F.3d 631, 635 (7th Cir. 2006). Thus, many cases have held that Section 230 bars claims based on allegedly illegal or egregious content. *See, e.g., Gibson*, 2009 WL 1704355 (alleged illegal handgun ad); *Corbis,* 351 F. Supp. 2d at 1118 (alleged unlawful celebrity photograph ads); *Doe II v. MySpace, Inc.*, 175 Cal. App. 4th 561 (2009) (luring and sexual assault of minors); *Doe IX*, 2009 WL 1457170 (same).[11]

## II. PLAINTIFF'S PROPOSED REMEDIES ARE BARRED AS A MATTER OF LAW.

Plaintiff's Response does not contest that dismissal of this action is independently required if all of the relief sought in his Complaint is unavailable as a matter of law. *See* Mem. at 20-25. And on the question of whether governing law bars the relief he seeks, he either offers no response at all (regarding monetary relief) or only a response that is obviously wrong (regarding injunctive relief). For this reason as well, dismissal of the Complaint is required.

### A. Illinois Law Bars Plaintiff's Claim for Monetary Relief.

craigslist's opening memorandum established that the monetary relief sought in the Complaint is categorically unavailable under binding Illinois Supreme Court precedent, including *City of Chicago v. Beretta USA*, 821 N.E.2d 1099 (2004). *See* Mem. at 20-23. *Plaintiff's Response does not even attempt a rebuttal.* Instead, it simply asserts, in a footnote, that "Craigslist's contention that the Sheriff cannot recover damages would be rendered moot" if the Court were to permit two organizations to shoehorn themselves into the case to try to

---

[11] Section 230 also contains an exception for claims based on intellectual property, and Plaintiff cites to *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster*, 545 U.S. 913 (2005), which involved claims of copyright infringement against an interactive service provider. Resp. at 16. Because Plaintiff's claims do not involve intellectual property, neither the exception nor the *Grokster* case are relevant.

13

advance their own claims for money damages.[12] Resp. at 18 n.2. Thus, Plaintiff has effectively conceded that he has no viable claim for monetary relief.

### B. The First Amendment Bars Plaintiff's Claim for Injunctive Relief.

craigslist's opening memorandum demonstrated that the injunctive relief sought in the Complaint — to "close . . . the erotic services section of Craigslist" (Cmplt. at ¶ 2) — would be an unconstitutional prior restraint on free speech. Mem. at 23-25. In light of craigslist's recent category change (*see supra* at 2), Plaintiff evidently construes his Complaint as now demanding permanent closure of the new adult services category. Resp. at 18. As Plaintiff recognizes, craigslist's constitutional argument applies equally to this implicitly revised demand. *Id.* at 18-19.

Plaintiff does not dispute that prior restraints on speech are invalid under the First Amendment in all but the most extreme circumstances. *See* Resp. at 18 ("prior restraints are disfavored"). Nor does he attempt to argue that the harms he anticipates are so "great and certain" as to meet this very high bar. *See* Mem. at 23. Nor does he attempt to demonstrate, as he must, both (1) that court-ordered closure of one part of the craigslist site would effectively prevent the harms he anticipates and (2) that there are no less intrusive means for avoiding such harms. *See id.* at 24. The *only* argument he offers is that an injunction permanently closing a category — and thereby barring all future craigslist users from speaking through that forum — would not actually constitute a prior restraint on speech. Resp at 18-19. According to Plaintiff, the extensive body of prior restraint case law cited by craigslist, spanning eight decades since the Supreme Court's decision in *Near v. Minnesota*, 283 U.S. 697 (1931), can be distinguished because all those precedents supposedly "involved restrictions made before speech," whereas an

---

[12] As noted, the Court has denied Plaintiff's attempt to amend the Complaint to add these organizations as parties.

14

injunction here supposedly would address unlawful speech that occurred before entry of the injunction. Resp. at 18-19 ("no prior restraint exists because Craigslist has already acted").

This argument inexplicably ignores the obvious fact that the injunction sought here if granted would curtail only future, not past, speech. It also ignores that many of the landmark court rulings on prior restraints struck down court orders or governmental edicts that, just like the injunction sought here, would have prospectively closed a channel of expression based on that channel's prior carriage of allegedly unlawful speech. Indeed, in *Near* itself, the Supreme Court held that the State could not enjoin publication of particular newspapers or magazines based on findings that they had previously published "obscene, lewd and lascivious" or "malicious, scandalous and defamatory" content. 283 U.S. at 711. The same reasoning applied in *Center for Democracy & Technology v. Pappert,* which struck down a law requiring Internet service providers to permanently block future access to websites based on governmental findings that the sites had *previously* hosted unlawful content. 337 F.Supp. 2d 606, 633 (E.D. Pa. 2004).

## CONCLUSION

For the reasons set forth in craigslist's opening Memorandum, and above, craigslist respectfully requests that this Court enter judgment dismissing Plaintiff's Complaint with prejudice.

Respectfully submitted,

August 6, 2008  CRAIGSLIST, INC.

By:  s/ Eric D. Brandfonbrener

Eric D. Brandfonbrener  
Elizabeth L. McDougall  
Kathleen A. Stetsko  
PERKINS COIE LLP  
131 S. Dearborn, Suite 1700  
Chicago, IL  60603  
Tel: (312) 324-8400

Patrick J. Carome  
Samir Jain  
WILMER CUTLER PICKERING  
HALE AND DORR LLP  
1875 Pennsylvania Ave., NW  
Washington, DC 20006  
Tel: (202) 663-6000

# CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on August 6, 2009, he caused a true and correct copy of **CRAIGSLIST'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS** to be served through the Court's electronic filing system on:

>Daniel F. Gallagher
>Paul O'Grady
>Christopher P. Keleher
>Querrey & Harrow, Ltd.
>Suite 1600
>175 W. Jackson Blvd.
>Chicago, Illinois 60604

                                                                 s/ Eric D. Brandfonbrener