09-1385.091-RSK                                    October 20, 2009

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

THOMAS DART, SHERIFF OF COOK           )
COUNTY                                 )
                                       )
            Plaintiff,                 )
                                       )
       v.                              )        No. 09 C 1385
                                       )
CRAIGSLIST, INC.                       )
                                       )
            Defendant.                 )

### MEMORANDUM OPINION

Before the court is defendant Craigslist, Inc.'s motion for judgment on the pleadings.  We grant the motion for the reasons explained below.

### BACKGROUND & PROCEDURAL HISTORY

In this diversity action Plaintiff Thomas Dart, the Sheriff of Cook County, Illinois, alleges that the "erotic" (now "adult") services section of Craigslist's popular Internet classifieds service facilitates prostitution and constitutes a public nuisance. (Compl. ¶ 1; id. at ¶ 5 (alleging that the parties are diverse and that the amount in controversy exceeds $75,000).)  Craigslist's users create and post "over thirty million new classified advertisements each month" for, among other things, "jobs, housing, dating, used items, and community information." (Id. at ¶¶ 11, 14.)  Craigslist's website, which displays the ads, is viewed over

Dockets.Justia.com

nine billion times each month. (<u>Id.</u> at ¶ 15.)  The webpage located at "chicago.craigslist.org," one of many region-specific webpages on Craigslist's website, displays Chicago-related listings arranged by categories (e.g., "for sale" and "services") and subcategories (e.g., "antiques" and "computer").  (<u>Id.</u> at ¶¶ 11, 25; <u>see also</u> <u>id.</u> at Ex. A (screenshot of the webpage at "chicago.craigslist.org").)  Craigslist created the categories, but its users create the content of the ads and select which categories their ads will appear in.  (<u>Id</u>. at ¶ 11, Exs. A & B; <u>see also</u> Def.'s Mem. at 2.)  Users posting ads on the website agree to abide by Craigslist's "Terms of Use," which prohibit posting unlawful content.  (Compl. at Ex. A (screenshot of "chicago.craigslist.org" with a link to Craigslist's Terms of Use); Answer ¶ 18.)[1]  Users browsing the "erotic" subcategory — which is (or was) the website's most popular destination — receive an additional "warning & disclaimer" stating that users entering that section agree to "flag 'prohibited'" any content that violates Craigslist's Terms of Use including "offers

---

[1]  "By using the Service in any way, you are agreeing to comply with the [Terms of Use]. . . .  You agree not to post, email, or otherwise make available Content:  a) that is unlawful, harmful, threatening, abusive, harassing, defamatory, libelous, invasive of another's privacy, or is harmful to minors in any way."  (Terms of Use, attached as Ex. 1 to Def.'s Answer, at ¶¶ 1 & 7(a).)  "Content" includes "all postings, messages, text, files, images, photos, video, sounds, or other materials."  (<u>Id.</u> at ¶ 3.)

for or the solicitation of prostitution." (<u>Id.</u> at ¶ 35, Ex. C.)
Below the warning is a general "erotic services" link, and links to
further subcategories (e.g., "w4m" (women for men)). (<u>Id.</u> at Ex.
C.) Craigslist also gives users the option to search through ads
using a word-search function. (<u>Id.</u> at ¶ 26.)

Sheriff Dart alleges that, notwithstanding Craigslist's
warnings, users routinely post advertisements in the erotic-
services category "openly promis[ing] sex for money." (<u>Id.</u> at ¶
17.) Based on the samples that he cites in his complaint most of
the ads are veiled (sometimes very thinly) using code words. He
alleges, for example, that "roses" mean dollars and "greek" refers
to anal sex. (<u>Id.</u> at ¶ 30.) One advertisement states: "15 Min $50
Roses . . . 1hour $150 Roses" — so much for the code — and "How
About A G-R-E-E-K Lesson I'm A Great Student!!" (<u>Id.</u> at ¶ 32.)[2]
Other sample advertisements are more ambiguous. (Pl.'s Resp. at
Ex. 2 ("HELLO GENTELMEN NOW YOU MEET JADE AND TIPHANY WE DO TWO
GIRL SHOWS AND INDIVISUAL CALLS!! WE GARAUNTEE THE TIME OF YOUR
LIFE!!!") (spelling errors in the original).) Many of the ads

_____

[2] Spelling variations, like the hyphens in "G-R-E-E-K," are apparently
used to avoid detection by automated screening programs. This subterfuge, and
the use of sexual code words generally, is specifically prohibited by
Craigslist's "Erotic Services Posting Guidelines." (<u>See</u> Answer at Ex. 5.)

include nude or nearly-nude pictures, ostensibly of the person
posting the ad or offering his or her services. (Compl. ¶ 29; see
generally id. at Ex. E.) Sheriff Dart cites the advocacy group
"The Polaris Project" for the proposition that "Craigslist is now
the single largest source for prostitution, including child
exploitation, in the country." (Id. at ¶ 38; see also id. at ¶¶
41-45.) Law enforcement officials (including plaintiff) regularly
conduct prostitution stings using information culled from
advertisements in Craigslist's erotic-services category. (See,
e.g., id. at ¶ 57.)[3] By his own count plaintiff has arrested over
200 people through Craigslist since January of 2007. (Id. at ¶
58.) Some of those arrested were charged with pimping minors.
(Id. at ¶¶ 59-62.) He estimates that between January and November
2008 his department devoted 3,120 man-hours and approximately
$105,081.00 to make 156 arrests. (Id. at ¶ 78.)

Count I of Sheriff Dart's complaint alleges that Craigslist's
erotic-services category constitutes a public nuisance. See
Restatement (Second) of Torts § 821B(1) ("A public nuisance is an
unreasonable interference with a right common to the general
public."). As "evidence" of the public nuisance he alleges that

---

[3] Perhaps reflecting the problem of ambiguous posts, Sheriff Dart alleges
that in a typical sting an arrest is made only after the person identified in the
ad offers an undercover officer sex for money. (Compl. ¶ 64); see Chicago
Lawyers' Committee for Civil Rights Under Law, Inc. v. Craigslist, Inc., 519 F.3d
666, 668 (7th Cir. 2008) (Regarding discriminatory housing advertisements on
Craigslist's website: "[a]utomated filters and human reviewers may be equally
poor at sifting good from bad postings unless the discrimination is blatant; both
false positives and false negatives are inevitable.").

Craigslist violates federal, state, and local prostitution laws. (<u>Id.</u> at ¶ 93.) He contends that Craigslist "solicits for a prostitute" within the meaning of 720 ILCS 5/11-15 by "arrang[ing]" meetings of persons for purposes of prostitution and "direct[ing]" persons to places of prostitution. He also alleges more generally that Craigslist makes it easier for prostitutes, pimps, and patrons to conduct business. (Compl. ¶ 134 (Craigslist "streamlines the prostitution process"); <u>see</u> Chicago Municipal Code § 8-8-020 ("[N]o person knowingly shall direct, take, transport, or offer to direct, take, or transport, any person for immoral purposes to any other person, *or assist any person by any means to seek or to find any prostitute*.") (emphasis added); <u>see also</u> 18 U.S.C. § 1952(a)(3) (making it unlawful to use any facility in interstate commerce with the intent to "promote" or "facilitate the promotion of . . . any unlawful activity," including "prostitution offenses in violation of the laws of the State in which they are committed."). He seeks to recoup the money his department has spent policing Craigslist-related prostitution, compensatory damages, and punitive damages. (Compl. at 26.) In Count II of his complaint he requests an injunction requiring Craigslist to desist "engaging in the conduct complained of herein." (<u>Id.</u> at 27.) After Sheriff Dart filed this lawsuit Craigslist voluntarily changed certain aspects of its service. It terminated its "erotic" category and established a new "adult" category, which is subject to a "manual review process."

(Def.'s Reply at 3.)  It also reduced the number of subcategories from 21 to 5.  (Pl.'s Resp. at 1 fn. 1.)  Sheriff Dart contends that these changes are only cosmetic and that users continue to post unlawful content in the "new" adult-services section.  (Pl.'s Resp. at 1-2.)  In a footnote in its reply brief Craigslist purports to reserve the right to pursue dismissal on mootness grounds, but it does not press the argument or describe its new policy in any detail.  (Def.'s Reply at 4 n.1.)  Based upon the parties' submissions we are persuaded that there is still a live controversy.[4]

## DISCUSSION

### A.  Legal Standard

We review a Rule 12(c) motion for judgment on the pleadings applying the same standard we apply to a motion to dismiss under Rule 12(b)(6).  See Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009).  "Thus, we view the facts in the complaint in the light most favorable to the nonmoving party and will grant the motion only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.  However, we need not ignore facts set forth in the

---

[4]  One final procedural matter.  On the date that Sheriff Dart filed his response to Craigslist's Rule 12(c) motion he also sought leave to file an amended complaint adding two non-profit organizations as plaintiffs.  We denied his motion without prejudice.  At the same time we granted a third non-profit organization, Coalition Against Trafficking in Women ("CATW"), leave to file an amicus brief.  CATW's brief paints a troubling picture of the illegal sex trade, but it does not shed any light on the legal questions before us.

complaint that undermine the plaintiff's claim or give weight to unsupported conclusions of law." Id. (internal citation omitted); see also C. Wright & A. Miller, 5C Federal Practice and Procedure, at § 1368 ("Although a moving party, for purposes of the Rule 12(c) motion, concedes the accuracy of the factual allegations in his adversary's pleading, he does not admit other assertions in the opposing party's pleading that constitute conclusions of law, legally impossible facts, or matters that would not be admissible in evidence at trial.").

**B.  Subject Matter Jurisdiction**

Although neither party raises the issue, we must decide whether we have subject-matter jurisdiction before addressing the parties' other contentions. Wernsing v. Thompson, 423 F.3d 732, 743 (7th Cir. 2005) ("[N]ot only may the federal courts police subject matter jurisdiction *sua sponte*, they must.") (citation and internal quotation marks omitted). Craigslist concedes that the parties are diverse, but does not admit that the amount-in-controversy requirement is satisfied. (Answer ¶ 5.) In its memorandum in support of its Rule 12(c) motion Craigslist argues that Sheriff Dart cannot recover money damages for the alleged public nuisance. (Def.'s Mem. at 20-23); see City of Chicago v. Beretta U.S.A. Corp., 821 N.E.2d 1099, 1139-47 (Ill. 2004)(holding that the city could not recover money damages in its public-nuisance lawsuit against the defendant gun manufacturer). Sheriff

Dart does not address this argument except to say that <u>Beretta</u> would not apply to the non-profit organizations he sought to join in this lawsuit. (Pl.'s Resp. at 18 n.2; <u>see also</u> *supra* n.4.) In other words, he seems to concede that *he* cannot recover money damages, including the $105,081.00 he alleges his department has spent policing Craigslist-related crimes. <u>See</u> <u>Schimmer v. Jaguar Cars, Inc.</u>, 384 F.3d 402, 406 (7th Cir. 2004) (A court is not required to accept at face value the amount of damages requested in the complaint if the plaintiff "is not entitled *at law* to recover such damages.")(emphasis in original). But he also seeks injunctive relief and we may consider the cost to Craigslist of complying with an injunction to determine whether this lawsuit satisfies the amount-in-controversy requirement. <u>See</u> <u>Uhl v. Thoroughbred Technology and Telecommunications, Inc.</u>, 309 F.3d 978, 983 (7th Cir. 2002); <u>see also</u> <u>In re Brand Name Prescription Drugs Antitrust Litigation</u>, 123 F.3d 599, 609 (7th Cir. 1997) ("Looked at from the defendants' standpoint, the minimum amount in controversy would be present if the injunction sought by the plaintiffs would require some alteration in the defendant's method of doing business that would cost the defendant at least the statutory minimum amount."). Craigslist charges users a fee (between $5 and $10) to post advertisements in the adult-services section, and Sheriff Dart

alleges that users frequently post ads in that section.[5]  (<u>See,
e.g.</u>, Compl. ¶ 33 (alleging that the Chicago erotic-services
section "collects over 300 posts per day").)  Craigslist previously
announced its intention to donate those proceeds to charity, but we
do not believe that this makes the proceeds any less relevant for
jurisdictional purposes.  Craigslist also profits indirectly from
the website traffic generated by the adult-services section.  (<u>See</u>
Compl. ¶¶ 13, 37.)  Even if we disregard Sheriff Dart's claim for
money damages "it does not appear to a legal certainty that the
amount in controversy is less than the jurisdictional threshold."
<u>R.R. Street & Co., Inc. v. Vulcan Materials Co.</u>, 569 F.3d 711, 717
n.8 (7th Cir. 2009).

## C.  The Communications Decency Act

Craigslist contends that it is immune from liability pursuant
to Section 230(c) of the Communications Decency Act.  That
provision provides as follows:

> (c)  **Protection for "good samaritan" blocking and
> screening of offensive material**
>
> (1)  **Treatment of publisher or speaker**

---

[5]  With a few exceptions Craigslist does not charge its users a fee to
post ads on its website. (Compl. ¶ 13.)  In late 2008, with the tacit blessing
of 43 state attorneys general, Craigslist began charging users to post ads in the
erotic-services section.  (Compl. ¶¶ 45-51; <u>see also</u> Joint Statement, attached
as Ex. 8 to Def.'s Answer (document executed by Craigslist's CEO and 40 attorneys
general, including Illinois's, announcing "new measures" to combat unlawful
activity on Craigslist's website).)  Craigslist and the other signatories of the
"Joint Statement" believed that the fee would curb unlawful ads and make it
easier to locate the users who post them (users must pay the fee with a valid
credit card).  (Joint Statement at 1-2.)  Sheriff Dart contends that these
measures have not had their intended effect.  (Compl. ¶¶ 52-53.)

> No provider or user of an interactive computer service
> shall be treated as the publisher or speaker of any
> information provided by another information content
> provider.
>
> (2) **Civil liability**
>
> No provider or user of an interactive computer service
> shall be held liable on account of--(A) any action
> voluntarily taken in good faith to restrict access to or
> availability of material that the provider or user
> considers to be obscene, lewd, lascivious, filthy,
> excessively violent, harassing, or otherwise
> objectionable, whether or not such material is
> constitutionally protected; or (B) any action taken to
> enable or make available to information content providers
> or others the technical means to restrict access to
> material described in paragraph (1).

47 U.S.C. § 230(c). Sheriff Dart does not dispute that Craigslist provides an "interactive computer service" within the statute's meaning. See id. at § 230(f)(2); see also Chicago Lawyers, 519 F.3d at 669 (assuming without discussion that Craigslist provides an "interactive computer service"). And with a caveat that we discuss infra, he does not dispute that the ads are "information provided by another information content provider" (namely, Craigslist's users). See 47 U.S.C. § 230(f)(3); Chicago Lawyers, 519 F.3d at 671 (noting that Craigslist's users provided the "information" at issue (in that case, discriminatory housing ads)). Section 230 preempts contrary state law with certain inapplicable exceptions. See 47 U.S.C. § 230(e)(3) ("No cause of action may be

brought and no liability may be imposed under any State or local law that is inconsistent with this subsection.").[6]

Craigslist contends that § 230(c)(1) "broadly immunizes providers of interactive computer services from liability for the dissemination of third-party content." <u>See, e.g.</u>, <u>Zeran v. America Online, Inc.</u>, 129 F.3d 327, 330 (4th Cir. 1997). That appears to be the majority view, <u>see Chicago Lawyers' Committee for Civil Rights Under the Law, Inc. v. Craigslist, Inc.</u>, 461 F.Supp.2d 681, 689-90 n. 6 & 7 (N.D. Ill. 2006) (collecting cases), but our Court of Appeals has not adopted it. <u>See Chicago Lawyers</u>, 519 F.3d at 669; <u>Doe v. GTE Corporation</u>, 347 F.3d 665, 656-57 (7th Cir. 2003). The Court has concluded, however, that § 230(c)(1) may foreclose liability in the appropriate case. In <u>Chicago Lawyers</u> the plaintiff sued Craigslist for allegedly violating 42 U.S.C. § 3604(a), which makes it illegal "[t]o make, print, or publish, or cause to be made, printed, or published" any discriminatory housing notice. <u>Chicago Lawyers</u>, 519 F.3d at 668. The plaintiff contended that Craigslist was liable for publishing, or causing to be published, discriminatory advertisements posted by its users in the

---

[6]/ Sheriff Dart points out that the statute does not affect federal criminal law, but the reference in the complaint to 18 U.S.C. § 1952 does not bring his public-nuisance suit within that exception. <u>See</u> 47 U.S.C. § 230(e)(1); <u>Doe v. Bates</u>, No. 5:05-CV-91-DF-CMC, 2006 WL 3813758, *22 (E.D. Tex. Dec. 27, 2006) (holding that a civil claim against Yahoo! under 18 U.S.C. 2252A(f), permitting civil actions against those who violate the criminal provisions of the same statute, did not constitute "enforcement" of a criminal statute for purposes of § 230(e)(1)); <u>see also</u> <u>id.</u> ("Congress decided not to allow private litigants to bring civil claims based on their own beliefs that a service provider's actions violated the criminal laws.").

website's "Housing" category. Id. Quoting extensively from dicta
in its opinion in Doe v. GTE Corporation, the Court concluded that
§ 230(c) is not "a general prohibition of civil liability for
web-site operators and other online content hosts." Id. at 669-70.
In GTE the Court posited that it was inconsistent with the
statute's apparent purpose to encourage monitoring ("Protection for
'good samaritan' blocking and screening of offensive material") to
read § 230(c)(1) to immunize internet-service providers ("ISPs")
who do nothing to monitor the content they make available to the
public. GTE, 347 F.3d at 660. Why, in that case, would an ISP
undertake "costly" precautions? Id. This led the Court to suggest
alternative statutory interpretations before ultimately concluding
that the defendant was not liable under state law, whatever the
proper interpretation of § 230(c)(1) might be. Id. In Chicago
Lawyers the proper interpretation of § 230(c)(1) was squarely
presented and the Court interpreted that provision
straightforwardly: "an online information system must not 'be
treated as the publisher or speaker of any information provided by'
someone else." Chicago Lawyers, 519 F.3d at 671. Applying §
230(c)(1) the Court concluded that Craigslist was not liable for
the discriminatory advertisements because "only in a capacity as
publisher could craigslist be liable under § 3605(c). It is not
the author of the ads and could not be treated as the 'speaker' of
the posters' words, given § 230(c)(1)." Id. at 671. The Court
also rejected the plaintiff's argument that Craigslist could be

held liable "as one who 'cause[d] to be made, printed, or published any [discriminatory] notice, statement, or advertisement." <u>Id.</u> The argument was deemed to be premised an overly broad interpretation of "cause:"

> An interactive computer service "causes" postings only in the sense of providing a place where people can post. Causation in a statute such as § 3604(c) must refer to causing a particular statement to be made, or perhaps the discriminatory content of a statement. That's the sense in which a non-publisher can cause a discriminatory ad, while one who causes the forbidden content may not be a publisher. Nothing in the service craigslist offers induces anyone to post any particular listing or express a preference for discrimination; for example, craigslist does not offer a lower price to people who include discriminatory statements in their postings. If craigslist "causes" the discriminatory notices, then so do phone companies and courier services (and, for that matter, the firms that make the computers and software that owners use to post their notices online), yet no one could think that Microsoft and Dell are liable for "causing" discriminatory advertisements.

<u>Id.</u> at 671-72. The plaintiff in <u>Chicago Lawyers</u> was free to use Craigslist's service to identify and investigate the individuals responsible for posting discriminatory ads, "[b]ut given § 230(c)(1) it cannot sue the messenger just because the message reveals a third party's plan to engage in unlawful discrimination." <u>Id.</u> at 672.[7]

**D. Applying § 230(c)(1) to Plaintiff's Public-Nuisance Claim**

---

[2/] Insofar as plaintiff implies that § 230(c)(1) applies only or primarily to defamation cases, (Pl.'s Resp. at 6-7, 8-9), <u>Chicago Lawyers</u> squarely refutes that argument. <u>Chicago Lawyers</u>, 519 F.3d at 671 ("[A] law's scope often differs from its genesis."). Nor is there any indication that the Court considered it legally relevant whether Craiglist knew generally that people were using its service to post discriminatory ads. (<u>Cf</u>. Pl.'s Resp. at 17-18; Compl. ¶¶ 88-89, 112.)

Sheriff Dart alleges that Craigslist itself violates criminal laws prohibiting prostitution and related offenses.  <u>See</u> <u>Beretta</u>, 821 N.E.2d at 1116 (noting the court's "reluctance" to expand the public nuisance tort beyond claims involving the defendant's use of land and/or violation of a statute or ordinance).  He alleges for example that Craigslist knowingly "arranges" meetings for the purpose of prostitution and "directs" people to places of prostitution.  (Compl. ¶¶ 94, 106); <u>see</u> 720 ILCS 5/11-15.  But these allegations strain the ordinary meaning of the terms "arrange" and "direct" unless Craigslist itself created the offending ads.[8]  There is no such allegation, and given § 230(c)(1), we cannot treat Craigslist as if it *did* create those ads.  <u>Chicago Lawyers</u>, 519 F.3d at 671 (noting that Craiglist had not authored the discriminatory ads "and could not be treated as the 'speaker' of the posters' words, given § 230(c)(1).").  The same goes for plaintiff's allegation that Craigslist "provid[es] the contact information of prostitutes and brothels."  (Compl. ¶ 107.)  Craigslist does not "provide" that information, its users do.  "Facilitating" and "assisting" encompass a broader range of conduct, so broad in fact that they include the services provided by intermediaries like phone companies, ISPs, and computer manufacturers.  Intermediaries are not culpable for "aiding and

---

[8]/ <u>Webster's Third New International Dictionary</u> 120 (Philip G. Gove et al., eds., 1970) (arrange: "to effect usu. by consulting: come to an agreement or understand about: SETTLE"); <u>id.</u> at 640 (direct: "to show or point out the way for").

abetting" their customers who misuse their services to commit
unlawful acts. GTE, 347 F.3d at 659; see also Chicago Lawyers, 519
F.3d at 668 ("Online services are in some respects like the
classified pages of newspapers, but in others they operate like
common carriers such as telephone services.").

Craigslist is like a newspaper, and unlike a phone company or
computer manufacturer, in that it publishes information supplied by
its users. Newspapers and magazines may be held liable for
publishing ads that harm third parties. See, e.g., Braun v.
Soldier of Fortune, 968 F.2d 1110, 1114 (11th Cir. 2003)
(concluding that under Georgia law the defendant "had a legal duty
to refrain from publishing advertisements that subjected the
public, including appellees, to a clearly identifiable unreasonable
risk of harm from violent criminal activity"); see also Beretta,
821 N.E.2d at 1124 ("[I]t is possible to create a public nuisance
by conducting a lawful enterprise in an unreasonable manner.").
Although he carefully avoids using the word "publish," Sheriff
Dart's complaint could be construed to allege "negligent
publishing." (Compl. ¶ 135 ("It was foreseeable to Defendant that
prostitution would be a likely result where it created a section
named 'erotic services' and designated twenty-one categories based
on sexual preference.").) In GTE the Court expressly declined to
decide whether such a claim was compatible with § 230(c)(1). GTE,
347 F.3d at 660. We believe that the Court answered that question
implicitly in Chicago Lawyers. A claim against an online service

provider for negligently publishing harmful information created by
its users treats the defendant as the "publisher" of that
information. See Chicago Lawyers, 519 F.3d at 671; see also Barnes
v. Yahoo!, Inc., 570 F.3d 1096, 1102 (9th Cir. 2009) ("[C]ourts
must ask whether the duty that the plaintiff alleges the defendant
violated derives from the defendant's status or conduct as a
'publisher or speaker.' If it does, section 230(c)(1) precludes
liability."); Gibson v. Craigslist, Inc., No. 08 Civ. 7735(RMB),
2009 WL 1704355, *3-4 (S.D.N.Y. June 15, 2009) (section 230(c)(1)
barred claim against Craigslist for publishing an advertisement
selling a third-party a handgun that was used to shoot the
plaintiff).

Sheriff Dart insists, on the other hand, that Craigslist plays
a more active role than an intermediary or a traditional publisher.
He claims that Craigslist causes or induces its users to post
unlawful ads — by having an "adult services" category with
subsections like "w4m" and by permitting its users to search
through the ads "based on their preferences." (Pl.'s Resp. at 7;
Compl. ¶¶ 86-87, 122, 134-36.) "A website operator can be both a
service provider and a content provider: If it passively displays
content that is created entirely by third parties, then it is only
a service provider with respect to that content. But as to content
that it creates itself, or is 'responsible, in whole or in part'
for creating or developing, the website is also a content
provider." Fair Housing Council of San Fernando Valley v.

Roommates.com, LLC, 521 F.3d 1157, 1162-63 (9th Cir. 2008) (quoting 47 U.S.C. § 230(f)(3)). This theory finds some support in Chicago Lawyers, which indicated that notwithstanding § 230(c) Craigslist could be held liable for "causing" discriminatory ads if that was in fact what it had done. Chicago Lawyers, 519 F.3d at 671-72. And we are mindful that whatever the exact parameters of § 230(c)(1) "immunity" are, it is not a "general prohibition of civil liability for web-site operators and other online content hosts." Id. at 669; see also id. at 670 ("'[I]nformation content providers' may be liable for contributory infringement if their system is designed to help people steal music or other material in copyright.") (citing Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913 (2005)). But as the Court observed in Chicago Lawyers, "[n]othing in the service craigslist offers induces anyone to post any particular listing." Chicago Lawyers, 519 F.3d at 671; see also Roomates.com 521 F.3d at 1172 n.33 (likening to Craigslist's service the "open-ended essay" portion of the defendant's roommate-matching website, which gave users free rein to post whatever they liked (including discriminatory content)). We disagree with plaintiff that the "adult services" section is a special case. The phrase "adult," even in conjunction with "services," is not unlawful in itself nor does it necessarily call for unlawful content. Cf. Roommate.com, 521 F.3d at 1161 (concluding that § 230(c)(1) did not protect a website operator whose roommate-matching service "require[d]" users to answer

discriminatory questions from a menu of answers that the defendant supplied). The same is true of the subcategories. Plaintiff is simply wrong when he insists that these terms are all synonyms for illegal sexual services. (Pl.'s Resp. at 11 (Arguing that "[a]dult services and its subcategories are the housing equivalent of a 'whites only' or 'gays only' section.").) A woman advertising erotic dancing for male clients ("w4m") is offering an "adult service," yet this is not prostitution. <u>See</u> 720 ILCS 5/11-14(a) (defining prostitution as "sexual penetration" or "any touching or fondling of the sex organs of one person by another person . . . for the purpose of sexual arousal or gratification" in exchange for something of value). It may even be entitled to some limited protection under the First Amendment. <u>See</u> <u>City of Erie v. Pap's A.M.</u>, 529 U.S. 277, 289 (2000) (plurality opinion). Plaintiff's argument that Craigslist causes or induces illegal content is further undercut by the fact that Craigslist repeatedly warns users not to post such content. <u>See</u> <u>Roomates.com</u>, 521 F.3d at 1171 ("[T]he website did nothing to encourage the posting of defamatory content — indeed, the defamatory posting was contrary to the website's express policies.") (citing <u>Carafano v. Metrosplash.com, Inc.</u>, 339 F.3d 1119 (9th Cir. 2003)). While we accept as true for the purposes of this motion plaintiff's allegation that users routinely flout Craigslist's guidelines, it is not because Craigslist has caused them to do so. Or if it has, it is only "in the sense that no one could post [unlawful content] if craigslist

did not offer a forum." <u>Chicago Lawyers</u>, 519 F.3d at 671. Section 230(c)(1) would serve little if any purpose if companies like Craigslist were found liable under state law for "causing" or "inducing" users to post unlawful content in this fashion. <u>See Chicago Lawyers</u>, 519 F.3d at 671; <u>cf.</u> <u>NPS, LLC v. StubHub, Inc.</u>, No. 06-4874-BLS1, 2009 WL 995483, *10-13 (Mass. Super. Jan. 26, 2009) (concluding that there was a material issue of fact whether the defendant "intentionally induced" its users to violate anti-scalping laws). The fact that Craigslist also provides a word-search function does not change the analysis. The word-search function is a "neutral tool" that permits users to search for terms that they select in ads created by other users. <u>Roomates.com</u>, 521 F.3d at 1167 ("[O]rdinary search engines do not use unlawful criteria to limit the scope of searches conducted on them, nor are they designed to achieve illegal ends — as Roommate's search function is alleged to do here."). It does not cause or induce anyone to create, post, or search for illegal content.[9]

---

[9] Each of the cases plaintiff cites is distinguishable on the same or similar grounds. <u>See</u> <u>Anthony v. Yahoo Inc.</u>, 421 F.Supp.2d 1257, 1262-63 (N.D. Cal. 2006) (section 230(c)(1) did not apply where the plaintiff alleged that the defendant created fake user profiles to persuade users to renew their subscriptions to the defendant's online dating service); <u>see also</u> <u>Hy Cite Corp. v. Badbusinessbureau.com</u>, 418 F.Supp.2d 1142, 1148-49 (D. Ariz. 2005) (immunity not appropriate at the pleading stage where the plaintiff alleged that the defendant created the allegedly defamatory content); <u>MCW, Inc. v. Badbusinessbureau.com</u>, No. Civ.A.3:02-CV-2727-G, 2004 WL 833595, *10 (N.D. Tex. Apr. 19, 2004) (concluding that the defendant could be held liable for actively soliciting defamatory content and for creating "disparaging titles, headings, and editorial messages"); <u>cf.</u> <u>Whitney Information Network, Inc. v. Xcentric Ventures, LLC</u>, No. 2:04-cv-47-FtM-34SPC, 2008 WL 450095, *12 (M.D. Fla. Feb. 15, 2008) (concluding that the defendant was not responsible, in whole or in part, for allegedly defamatory postings on its website). These authorities would be helpful to Sheriff Dart only if Craigslist had a hand in creating the unlawful content supplied by its users.

Sheriff Dart's lengthy complaint relies heavily on a few conclusory allegations to support the contention that Craigslist induces users to post ads for illegal services.  Even at this stage of the case we are not required to accept those allegations at face value, and they are not meaningfully different from the allegations that our Court of Appeals rejected just last year.  The complaint's remaining allegations plainly treat Craigslist as the publisher or speaker of information created by its users. Like the plaintiff in Chicago Lawyers, Sheriff Dart may continue to use Craiglist's website to identify and pursue individuals who post allegedly unlawful content.  Chicago Lawyers, 519 F.3d at 672.  But he cannot sue Craigslist for their conduct.  Id.[10]

### CONCLUSION

Defendant's motion for judgment on the pleadings (12) is granted.

DATE:      October 20, 2009

ENTER:     _____

John F. Grady, United States District Judge

---

[10]/  We do not reach Craigslist's alternative argument that the requested injunction would violate the First Amendment.  See Rehman v. Gonzales, 441 F.3d 506, 508 (7th Cir.2006) ("Non-constitutional arguments always come first; constitutional contentions must be set aside until their resolution is unavoidable.").  Nor do we reach its alternative argument that it cannot be held liable for creating the erotic-services category because it did so in good faith to "restrict access" to objectionable material.  (Def.'s Mem. at 15 n.15); see 47 U.S.C. § 230(c)(2).